No. 14-1869

# In the United States Court of Appeals for the Seventh Circuit

—————

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

*v.*

KEVIN TRUDEAU,
DEFENDANT-APPELLANT

—————

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, NO. 10-CR-886-1 HON. RONALD A. GUZMAN, PRESIDING*

—————

## OPENING BRIEF FOR DEFENDANT-APPELLANT KEVIN TRUDEAU

—————

KIMBALL R. ANDERSON
THOMAS L. KIRSCH, II
*Winston & Strawn LLP*
*35 West Wacker Drive*
*Chicago, IL 60601*
*(312) 558-5600*

CHRISTOPHER M. BRUNO*
JEFF P. JOHNSON
*Winston & Strawn LLP*
*1700 K Street NW*
*Washington, DC 20006*
*(202) 282-5000*

*\*Counsel of Record*

*Counsel for Defendant-Appellant Kevin Trudeau*

***Oral Argument Requested***

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS

Appellate Court No.: **14-1869**

Short Caption: **United States v. Kevin Trudeau**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

**Kevin Mark Trudeau**

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**WINSTON & STRAWN LLP**
**CAROLYN GURLAND, ATTORNEY AT LAW**
**LAW OFFICES OF DANIEL HURTADO**

(3)    If the party or amicus is a corporation:

(i)    Identify all its parent corporations, if any: **Not Applicable**

(ii)    List any publicly held company that own 10% or more of the party's or amicus' stock: **Not Applicable**

Attorney's Signature:＿＿/s/ Christopher M. Bruno＿＿＿＿＿＿＿
Date: August 22, 2014

Attorney's Printed Name:    **Christopher M. Bruno**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).              **Yes**

Address:          **Winston & Strawn LLP**
                 **1700 K Street NW**
                 **Washington, District of Columbia 20006**

Phone Number:  **(202) 282-5670**
Fax Number:    **(202) 282-5100**
Email Address: **CMBruno@winston.com**

Appellate Court No.: **14-1869**

Short Caption:  **United States v. Kevin Trudeau**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

**Kevin Mark Trudeau**

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**WINSTON & STRAWN LLP**
**CAROLYN GURLAND, ATTORNEY AT LAW**
**LAW OFFICES OF DANIEL HURTADO**

(3)    If the party or amicus is a corporation:

(i)    Identify all its parent corporations, if any: **Not Applicable**

(ii)    List any publicly held company that own 10% or more of the party's or amicus' stock: **Not Applicable**

Attorney's Signature:   /s/ Kimball R. Anderson
Date: August 22, 2014

Attorney's Printed Name:    **Kimball R. Anderson**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).            **No**

Address:        **Winston & Strawn LLP**
                **35 West Wacker Drive**
                **Chicago, Illinois  60601**

Phone Number:  **(312) 558-5858**
Fax Number:    **(312) 558-5700**
Email Address:  **KAnderson@winston.com**

Appellate Court No.: **14-1869**

Short Caption:  **United States v. Kevin Trudeau**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

**Kevin Mark Trudeau**

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**WINSTON & STRAWN LLP**
**CAROLYN GURLAND, ATTORNEY AT LAW**
**LAW OFFICES OF DANIEL HURTADO**

(3)    If the party or amicus is a corporation:

(i)    Identify all its parent corporations, if any: **Not Applicable**

(ii)    List any publicly held company that own 10% or more of the party's or amicus' stock: **Not Applicable**

Attorney's Signature:____/s/ Thomas Lee Kirsch, II_____
Date: <u>August 22, 2014</u>

Attorney's Printed Name:    **Thomas L. Kirsch**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **No**

Address:    **Winston & Strawn LLP**
**35 West Wacker Drive**
**Chicago, Illinois  60601**

Phone Number:  **(312) 558-3220**
Fax Number:    **(312) 558-5700**
Email Address:  **TKirsch@winston.com**

iii

Appellate Court No.: **14-1869**

Short Caption:  **United States v. Kevin Trudeau**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

   **Kevin Mark Trudeau**

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   **WINSTON & STRAWN LLP**
   **CAROLYN GURLAND, ATTORNEY AT LAW**
   **LAW OFFICES OF DANIEL HURTADO**

(3)    If the party or amicus is a corporation:

   (i)    Identify all its parent corporations, if any: **Not Applicable**

   (ii)    List any publicly held company that own 10% or more of the party's or amicus' stock: **Not Applicable**

Attorney's Signature:___/s/ Jeff P. Johnson_____
Date: August 22, 2014

Attorney's Printed Name:    **Jeff P. Johnson**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).              **No**

Address:    **Winston & Strawn LLP**
   **1700 K Street NW**
   **Washington, District of Columbia 20006**

Phone Number:  **(202) 282-5621**
Fax Number:  **(202) 282-5100**
Email Address:  **JPJohnson@winston.com**

iv

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ..................................... i

TABLE OF AUTHORITIES ......................................................... viii

INTRODUCTION ................................................................... 1

JURISDICTIONAL STATEMENT .................................................... 4

ISSUES PRESENTED .............................................................. 5

STATEMENT OF THE CASE ........................................................ 7

    A.    "The Weight Loss Cure 'They' Don't Want You to Know About" and "Natural Cures 'They' Don't Want You to Know About" ........................................................... 7

    B.    The 2004 FTC Consent Order and the "Misrepresentation" Clause ...................................................... 8

    C.    The Contempt Charge and the Pretrial Proceedings ..................... 9

    D.    Trudeau's Trial ......................................................... 14

    E.    Post-Trial and Sentencing ............................................. 16

SUMMARY OF ARGUMENT ....................................................... 17

ARGUMENT ...................................................................... 22

I.    The Government Violated Trudeau's Speedy Trial Act Rights, Permitting 393 Days to Pass Before He Was Brought to Trial ............. 22

    A.    The Speedy Trial Act applied to Trudeau's contempt charge, either as a matter of judicial estoppel or statutory interpretation. ...................................................... 23

        1.    The Government was judicially estopped from arguing that the Act did not reach Trudeau's criminal contempt charge. ........................................... 24

2.  As a matter of statutory interpretation, the Act
    applies.................................................................................. 25

    a.  Criminal contempt show cause orders are
        "information[s] or indictment[s]" under the
        Speedy Trial Act.......................................................... 26

    b.  Trudeau's contempt charge—under both the
        Gettleman Order and the Guzman Order—was
        an offense starting the speedy trial clock when
        the Government accepted prosecution...................... 31

        i.   Trudeau's contempt charge was a Class A
             or Class C felony under the Act. ..................... 31

        ii.  Because Trudeau's "new" life-
             imprisonable contempt charge merely
             gilded his "prior" six-month charge, his
             Speedy Trial rights were still violated. .......... 33

B.  Once this Court finds the Speedy Trial Act applies, there is
    no question that the Government did not prosecute
    Trudeau within the Act's 70-day window.................................... 36

C.  Dismissal with prejudice is appropriate....................................... 37

II.  The District Court Improperly Permitted the Jury to Find
Willfulness Without Evidence That Trudeau Actually Knew That
His Conduct Was Unlawful.................................................................... 39

A.  Supreme Court case law demonstrates that in criminal
    contempt cases, willfulness requires a showing of actual
    knowledge................................................................................... 40

B.  Under the correct willfulness standard, the district court's
    willfulness instruction was plain error resulting in severe
    prejudice to Trudeau................................................................. 43

C.  Trudeau is entitled to a judgment of acquittal because the
    Government presented no state of mind evidence....................... 47

III.  A New Trial Is Warranted Because the District Court Misapplied
the Willfulness Standard......................................................................... 51

vi

A.    The district court improperly prohibited Trudeau from arguing that the FTC-approved *Natural Cures* infomercial was relevant to his understanding of the FTC Order.................. 53

B.    Similarly, the court wrongly prohibited Trudeau from presenting his defense that he believed the First Amendment protected his expression of his opinions and experiences. ................................................................... 57

IV.    Trudeau's Ten-Year Criminal Contempt Sentence—Among the Highest Ever for Criminal Contempt—is Excessive............................ 60

CONCLUSION............................................................... 62

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)

ADDENDUM – APPLICABLE LAW

CERTIFICATE OF SERVICE

ATTACHED SHORT APPENDIX

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arizona v. Fulminante,*
499 U.S. 279 (1991) ........................................................... 44

*Bloate v. United States,*
559 U.S. 196 (2010) ........................................................... 38

*Blockburger v. United States,*
284 U.S. 299 (1932) ...................................................... 34, 36

*Bloom v. Illinois,*
391 U.S. 194 (1968) ........................................................... 33

*Brooks v. Walls,*
279 F.3d 518 (7th Cir. 2002) ............................................. 40

*Bryan v. United States,*
524 U.S. 184 (1998) .............................................. 20, 41, 56

*Caldwell v. United States,*
595 A.2d 961 (D.C. 1991) .................................................. 60

*Cheek v. United States,*
498 U.S. 192 (1991) ..................................................... passim

*Dixon v. United States,*
548 U.S. 1 (2006) ........................................................ passim

*Frank v. United States,*
395 U.S. 147 (1969) ..................................................... 19, 32

*FTC v. Trudeau,*
567 F. Supp. 2d 1016 (N.D. Ill. 2007) ................................. 9

*FTC v. Trudeau,*
579 F.3d 754 (7th Cir. 2009) .............................................. 9

*FTC v. Trudeau,*
Case No. 03-cv-3904 (N.D. Ill.) ........................................... 1

*Gompers v. United States,*
233 U.S. 604 (1914) ..................................................... 18, 28

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers
Local No. 70 of Alameda Cnty.,*
415 U.S. 423 (1974) ........................................................... 56

*Greyhound v. United States,*
508 F.2d 529 (1972) ........................................................... 20

*Griffin v. Oceanic Contractors, Inc.,*
458 U.S. 564 (1982)................................................................27, 28

*Hamling v. United States,*
418 U.S. 87 (1974).......................................................................44

*Henderson v. United States,*
133 S. Ct. 1121 (2013)............................................................43, 44

*Holmes v. South Carolina,*
547 U.S. 319 (2006)...............................................................55, 58

*In re Betts,*
730 F. Supp. 942 (C.D. Ill. 1990), *rev'd sub nom., Matter of Betts*, 927
F.2d 983 (7th Cir. 1991)..............................................................29

*In re Troutt,*
460 F.3d 887 (7th Cir. 2006).........................................................60

*Levinson v. United States,*
969 F.2d 260 (7th Cir.1992)..........................................................24

*McComb v. Jacksonville Paper Co.,*
336 U.S. 187 (1949).......................................................................39

*New Hampshire v. Maine,*
532 U.S. 742, 750 (2001)..............................................................24

*Ratzlaf v. United States,*
510 U.S. 135 (1994)........................................................20, 41, 56

*Safeco Ins. Co. of Am. v. Burr,*
551 U.S. 47 (2007)................................................................ passim

*Solem v. Helm,*
463 U.S. 277 (1983).......................................................................60

*Taylor v. Kentucky,*
436 U.S. 478 (1978).......................................................................52

*United States ex rel. Attorney General v. Delaware & Hudson Co.,*
213 U.S. 366 (1909).......................................................................30

*United States ex rel. Porter v. Kroger Grocery & Baking Co.,*
163 F.2d 168 (7th Cir. 1947)....................................................41, 48

*United States v. Allen,*
269 F.3d 842 (7th Cir. 2001)..........................................................52

*United States v. Am. Trucking Ass'ns,*
310 U.S. 534 (1940).......................................................................27

*United States v. Andrews,*
790 F.2d 803 (10th Cir. 1986)........................................................34

*United States v. Arango,*
      879 F.2d 1501 (7th Cir. 1989)....................................................... 39

*United States v. Ashqar,*
      582 F.3d 819 (7th Cir. 2009)................................................... 17, 61

*United States v. Bailey,*
      111 F.3d 1229 (5th Cir. 1997)................................................ 34, 35

*United States v. Broussard,*
      611 F.3d 1069 (9th Cir. 2010)..................................................... 32

*United States v. Brown,*
      183 F.3d 1306 (11th Cir. 1999)................................................... 38

*United States v. Bukowski,*
      435 F.2d 1094 (7th Cir. 1970)............................................... 60, 61

*United States v. Bundu,*
      479 F. Supp. 2d 195 (D. Mass. 2007) ......................................... 38

*United States v. Caparella,*
      716 F.2d 976 (2nd Cir. 1983)..................................................... 38

*United States v. Clark,*
      754 F.3d 401 (7th Cir. June 6, 2014) ......................................... 33

*United States v. Cohn,*
      586 F.3d 844 (11th Cir. 2009)..................................................... 32

*United States v. Dawson,*
      434 F.3d 956 (7th Cir. 2006)....................................................... 29

*United States v. DeTienne,*
      468 F.2d 151 (7th Cir. 1972)................................................... 34, 35

*United States v. Fountain,*
      840 F.2d 509 (7th Cir. 1988)....................................................... 38

*United States v. Greyhound,*
      508 F.2d 529 (7th Cir. 1974)............................................... passim

*United States v. Hemmings,*
      258 F.3d 587 (7th Cir. 2001)................................................... 22, 35

*United States v. Holmes,*
      93 F.3d 289 (7th Cir. 1996)........................................ 20, 44, 46, 47

*United States v. Janik,*
      723 F.2d 537 (7th Cir. 1983)....................................................... 37

*United States v. Johnson,*
      592 F.3d 749 (7th Cir. 2010)....................................................... 48

*United States v. Jones,*
      713 F.3d 336 (7th Cir. 2013)........................................ 47, 48, 51

x

*United States v. Kerley,*
  838 F.2d 932 (7th Cir. 1988)....................................................... 44

*United States v. Killingsworth,*
  507 F.3d 1087 (7th Cir. 2007)..................................................... 38

*United States v. Leonard-Allen,*
  739 F.3d 948 (7th Cir. 2013)....................................................... 53

*United States v. Martinez-Espinoza,*
  299 F.3d 414 (5th Cir. 2002)....................................................... 34

*United States v. Menzer,*
  29 F.3d 1223 (7th Cir. 1994)....................................................... 35

*United States v. Misenheimer,*
  677 F. Supp. 1386 (N.D. Ind. 1988) ..................................... 17, 61

*United States v. Moncier,*
  2:07-CR-00040, 2010 WL 1904957 (E.D. Tenn. May 10, 2010)................. 29

*United States v. Moss,*
  217 F.3d 426 (6th Cir. 2000)....................................................... 39

*United States v. Mottweiler,*
  82 F.3d 769 (7th Cir. 1996)................................................... 41, 43

*United States v. Napolitano,*
  761 F.2d 135 (2d Cir. 1985) ........................................................ 34

*United States v. Olano,*
  507 U.S. 725 (1993)............................................................. 43, 44

*United States v. Oros,*
  578 F.3d 703 (7th Cir. 2009)....................................................... 52

*United States v. Prevatte,*
  300 F.3d 792 (7th Cir. 2002)....................................................... 30

*United States v. Rein,*
  848 F.2d 777 (7th Cir. 1988)....................................................... 36

*United States v. Richmond,*
  312 Fed. App'x 56 (9th Cir. 2009) ............................................... 29

*United States v. Rojas-Contreras,*
  474 U.S. 231 (1985)............................................................. 35, 37

*United States v. Romero,*
  585 F.2d 391 (9th Cir. 1978)....................................................... 34

*United States v. Ron Pair Enterprises, Inc.,*
  489 U.S. 235 (1989)................................................................. 29

*United States v. Russo,*
  741 F.2d 1264 (11th Cir. 1984)..................................................... 39

xi

*United States v. Seale,*
  461 F.2d 345 (1972)...................................................5, 40, 41, 43

*United States v. Smith,*
  576 F.3d 681 (7th Cir. 2009)..................................................38

*United States v. Watkins,*
  339 F.3d 167 (3d Cir. 2003) ................................................34

*United States v. Young,*
  470 U.S. 1 (1985) ..............................................................44

*United States v. Zakharia,*
  418 F. App'x 414 (6th Cir. 2011) ..........................................32

*Wilson v. City of Chicago,*
  2014 WL 3397697 (7th Cir. July 14, 2014)...........................53

*Zedner v. United States,*
  547 U.S. 489 (2006) .........................................................24

## STATUTES

18 U.S.C. § 401 .....................................................................4

18 U.S.C. § 401(3) ............................................................4, 31

18 U.S.C. § 1343 .................................................................33

18 U.S.C. § 3161(c)(1) ..........................................22, 26, 36, 37

18 U.S.C. § 3161(h)(5)...........................................................35

18 U.S.C. § 3162 .................................................................19

18 U.S.C. § 3162(a) .........................................................37, 39

18 U.S.C. § 3172 .................................................................31

18 U.S.C. § 3231 ...................................................................4

18 U.S.C. § 3559(3) .........................................................32, 33

18 U.S.C. § 3559(a) .............................................................31

18 U.S.C. § 3559(a)(1) .........................................................31

18 U.S.C. § 3559(a)(7) .........................................................31

18 U.S.C. § 3559(b) .............................................................31

18 U.S.C. § 3742 ...................................................................4

28 U.S.C. § 1291...................................................................4

Fed. R. Crim. P. 52(b) .........................................................43

Fed. R. Evid. 401 .................................................................53

**OTHER AUTHORITIES**

7th Cir. R. 40(e) ................................................................. 40

A. Partridge, Legislative History of Title I of the Speedy Trial Act of
    1974 (Fed. Judicial Center 1980) ........................................ 29, 36

Committee on the Administration of the Criminal Law of the Judicial
    Conference of the United States, Guidelines to the Administration of
    the Speedy Trial Act of 1974, as amended, 106 F.R.D. 271 (1984) ...... 29, 33

H.R. Rep. No. 96-390 (1979) ................................................. 29

## INTRODUCTION

Kevin Trudeau is a #1 *New York Times* author of bestselling books on topics such as natural health, the credit and banking system, the First Amendment, and the American food and weight loss industry. The Government has made clear that it deems Trudeau's "advice or the instructions [he] provides" "harmful" and "dangerous." 3/17/14 Tr. 7:13-18.[1] Accordingly, the Government (via the FTC) has crusaded for many years to squash Trudeau's advocacy on behalf of consumers.

On April 16, 2010, The Honorable Robert Gettleman of the Northern District of Illinois, the judge who oversaw the dispute with the FTC for over a decade, ordered Trudeau to "show cause why he should not be prosecuted for and held in criminal contempt" for misrepresenting the contents of his book in an infomercial. Sep. App. 31. Gettleman's order stated that "this court will consider imposing a term of imprisonment not to exceed six months[.]" *Id.* On October 19, 2010, Judge Gettleman exercised his prerogative as a senior judge to have the criminal case transferred, and the Honorable Ronald

---

[1] The record on appeal contains, among other things, three volumes of pleadings (cited as R. I __, R. II __, R. III __). Transcripts are cited as "[DATE] Tr. __." Citations to the Appendix are "App. ___," and citations to the Separate Appendix are "Sep. App. __." References to this Court's docket for this case are "Dkt. __," and citations to *FTC v. Trudeau*, Case No. 03-cv-3904 (N.D. Ill.) are "FTC Dkt. ___."

Guzman became the presiding judge. The Government requested that Judge
Guzman lift Judge Gettleman's six-month cap. Judge Guzman obliged. After
a six-day trial, Trudeau was convicted and the court sentenced him to ten
years imprisonment: the second longest criminal contempt sentence in the
Seventh Circuit's history.

Trudeau's conviction should be reversed for four reasons. *First*,
dismissal with prejudice is required because the Government missed the
Speedy Trial Act deadline by 393 days. *Second*, the Government did not
provide evidence that Trudeau **knew** that his infomercial statements
inaccurately reflected his book or that he **knew** his statements were
unlawful. Forty years ago, the Seventh Circuit held in *United States v.
Greyhound*, 508 F.2d 529 (7th Cir. 1974), that willfulness could be proven by
criminal recklessness: voluntary actions done by one who knows or
reasonably should know his actions were unlawful. But now, with at least 20
years of contrary Supreme Court guidance, the law is clear: willfulness
requires actual knowledge, not criminal recklessness. *Third*, along the same
lines, the district court erroneously instructed the jury that evidence showing
that the defendant disregarded a substantial and unjustifiable risk
sufficiently proved willfulness beyond a reasonable doubt.

*Fourth*, the district court prevented Trudeau from presenting two
defenses relating to his state of mind. Even under the *Greyhound* standard,

evidence that demonstrates the defendant's actual knowledge of his allegedly contumacious conduct is probative. Here, the district court prohibited Trudeau from introducing evidence that he modeled his latest book and infomercial off an earlier book and infomercial that the FTC approved. Additionally, it refused to allow Trudeau to present evidence that he believed some of his statements in the infomercial were protected by the FTC Consent Order's First Amendment reservation. These errors require a new trial.

If this Court does not reverse the conviction, it should revise Trudeau's sentence downward.

## JURISDICTIONAL STATEMENT

On November 12, 2013, a jury convicted Trudeau of criminal contempt under 18 U.S.C. § 401(3). On April 4, 2014, the court sentenced Trudeau to 120 months in prison. Thirteen days later, Trudeau filed a timely notice of appeal. Dkt. 1-1. The district court had subject matter jurisdiction under 18 U.S.C. §§ 401 and 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

# ISSUES PRESENTED

I.   The Speedy Trial Act requires the Government to try a criminal defendant within 70 chargeable days. On April 29, 2010, the Government accepted the court's criminal contempt referral. The Speedy Trial clock expired on January 14, 2011, and the Government did not bring Trudeau to trial until November 5, 2013.

Did the district court err by failing to dismiss the case under the Speedy Trial Act?

II.  Since at least 1991, the Supreme Court has consistently interpreted criminal willfulness to require the Government to demonstrate that a defendant knowingly engaged in conduct that he knew to be unlawful. Following Seventh Circuit precedent *United States v. Seale*, 461 F.2d 345 (1972), and *United States v. Greyhound*, 508 F.2d 529 (1974), the district court instructed the jury that it could also find willfulness if Trudeau acted recklessly—*i.e.*, if he reasonably should have known that his conduct was illegal.

   A. Should the Seventh Circuit follow the Supreme Court's guidance and hold that criminal recklessness is insufficient to demonstrate willful criminal contempt?

   B. Did the district court err by denying Trudeau's motion for judgment of acquittal, where the Government presented no evidence that Trudeau actually knew his conduct was wrongful?

III. A defendant may show that he did not act willfully by showing that he honestly attempted to comply with the law. But here, the district court prohibited Trudeau from showing his state of mind through circumstantial evidence.

   A. Did the court err by prohibiting Trudeau from presenting evidence about his prior course of dealing with the FTC about a different infomercial under the same consent order provision he was convicted of violating?

   B. Did the court err when it prevented Trudeau from presenting evidence and arguing from the text of the consent order that

he believed that the First Amendment protected some of the statements the Government charged were misrepresentations?

IV. The district court sentenced Trudeau to a ten-year term of imprisonment—one of the harshest criminal contempt sentences in the Circuit. Should the Court use its "special responsibility" to prevent abuse of the contempt power and revise Trudeau's sentence to reflect the nonseriousness of his crime?

## STATEMENT OF THE CASE

**A.  "The Weight Loss Cure 'They' Don't Want You to Know About" and "Natural Cures 'They' Don't Want You to Know About"**

In 2007, Trudeau published The Weight Loss Cure "They" Don't Want You to Know About ("*Weight Loss Cure*")—the book that brings him here—in which he opines about the U.S. food and weight loss industry and recommends various weight loss methods, including the optional HCG protocol originally developed by Dr. Simeons in the late 1950s. Gov. Ex. 4A at 1. A company called ITV Global purchased exclusive rights to the *Weight Loss Cure* book (other than for retail sales), and agreed to supply and market the book through infomercials. 11/8/13 Tr. 519:3-8. ITV Global produced three infomercials airing "approximately 30,000 times from December 15th, 2006 through December 31st, 2007" that featured Trudeau discussing the *Weight Loss Cure* book and his personal experiences and opinions about American obesity. 11/8/13 Tr. 519:19-22.

This was not Trudeau's first book-and-infomercial combination. Another in his series of commentaries about American health-related issues was "Natural Cures 'They' Don't Want You to Know About" ("*Natural Cures*"). Like the *Weight Loss Cure* book, the *Natural Cures* book provides Trudeau's opinions and suggestions. Both books also recommend many of the same health products, such as a Candida cleanse, a whole food supplement,

Coral Calcium, and a shower filter. R. III 82-84. In both the *Weight Loss Cure*

and the *Natural Cures* infomercials, Trudeau describes these products—and

related cleanses—as "simple." *Id.* at 84-85 n.1 (noting that both books

recommend cleansing the colon, liver, gallbladder, lung, fat tissue, and lymph

nodes). Both books share another feature: they were reviewed under the 2004

FTC consent order that Trudeau was convicted of violating here. But in one

important respect, they are different: the FTC found the *Natural Cures*

infomercial acceptable, but not the *Weight Loss Cures* infomercial.

## B. The 2004 FTC Consent Order and the "Misrepresentation" Clause

Trudeau and the FTC entered into a consent order in 2004 before the

Judge Gettleman to settle a suit alleging deceptive acts and practices, false

advertising, and violations of a prior stipulated order. Sep. App. 1-30 ("FTC

Consent Order"). The FTC agreed that Trudeau was not liable and would not

admit any guilt. Trudeau, in exchange, agreed that he would not, among

other things, "misrepresent the content of [a] book, newsletter, or

informational publication" in an infomercial. *Id.* at 9 (Part I). Recognizing the

potential for censorship, the FTC Consent Order reserved Trudeau's "right to

engage in speech protected by the First Amendment to the Constitution"

except where expressly waived. *Id.* at 15 (Part XI).

8

At the same time the parties were negotiating the FTC Consent Order,

Trudeau had developed a media campaign for the *Natural Cures* book. To

ensure it was compliant with FTC standards, Trudeau submitted the *Natural*

*Cures* manuscript and infomercials to the FTC for approval. R. III 140-41.

And in a July 23, 2004 e-mail, he received it. *Id.* (noting that the FTC "no

longer object[s] to the dissemination of the Natural Cures infomercial

pursuant to the preliminary injunction.").

At the hearing where the FTC Consent Order was approved, Trudeau's

counsel explained that the parties understood the *Natural Cures* book and

infomercial to be "the first tangible example of something that is acceptable

under [the infomercial] provision." Sep. App. 35. The Government agreed. *Id.*

## C. The Contempt Charge and the Pretrial Proceedings

In September 2007, the FTC initiated civil contempt proceedings

against Trudeau for his role in the *Weight Loss Cure* infomercials. *See FTC v.*

*Trudeau*, 579 F.3d 754, 760 (7th Cir. 2009). After a bench trial, Judge

Gettleman found Trudeau liable on November 16, 2007. *FTC v. Trudeau*, 567

F. Supp. 2d 1016, 1023 (N.D. Ill. 2007).

Two-and-a-half years later, on April 16, 2010, Judge Gettleman ordered

Trudeau to show cause why he should not be held in criminal contempt for

violating the FTC Consent Order. Sep. App. 31-32 ("Gettleman Order"). The

Gettleman Order limited Trudeau's potential term of imprisonment to six

months. *Id.* On April 29, 2010, the Government accepted in open court the court's referral to prosecute. Sep. App. at 39. At that time, the prosecutor noted she believed the Speedy Trial Act would apply. Sep. App. 41-42. The Government then sought and received an exclusion of time under the Act, and did so three more times between April 29 and September 29. FTC Dkt. 389; Sep. App. 44-46, 48. The Government's exclusions expired on October 21, 2010.

The case was reassigned to the Honorable Ronald Guzman on October 19, 2010. R. II 9. There, the case sat idle for months. The Speedy Trial Act clock continued to wind down until it expired on January 14, 2011, months before the Government took any action. *See infra* at 12 (Table 1).

Before Judge Gettleman, the Government represented that it would not seek a sentence greater than six months. FTC Dkt. 406 at 1 n.1. Yet on April 7, 2011, the first status hearing before Judge Guzman, the Government explained it would request the court remove the six-month sentence cap from the Gettleman Order. Sep. App. 54. The Government identified no new facts, charges, or sentencing enhancements; it justified the change based on the "nature of the offense" and Trudeau's "background." R. II 18. The court adopted the Government's position and removed the cap. App. 7-8, Sep. App. 65 ("Guzman Order").

Simultaneously, Trudeau moved to dismiss on Speedy Trial Act grounds because more than 70 Government-chargeable days had expired. R. II 52. The Government argued that the Act did not apply to Trudeau's prosecution because he was charged by show cause order, not "information or indictment," and that the Gettleman Order's six-month imprisonment cap rendered Trudeau's charge not an "offense" under the Act anyway. R. II 171-178. The court agreed with the Government on both grounds and denied Trudeau's motion on the same day that it removed the six-month cap from the Gettleman Order.  R. II 360. Going forward, however, the court required the Government to comply with the Act. App. 8. The following chart summarizes the Speedy Trial Act time calculation:

**Table 1. Summary of Speedy Trial Act Time Calculations**

| Date | Action | Cite | Speedy Trial Days Run | |
|------|--------|------|------------------------|---|
| | | | Count of Chargeable Days | Count of Chargeable Days (Excusing Processing Error)[2] |
| 4/16/10 | Gettleman Order issues with six-month imprisonment cap. | Sep. App. 31-32. | 0 | 0 |
| 4/29/10 | The Government accepted Judge Gettleman's referral and received an exclusion of time under the Speedy Trial Act through 7/29/10. | Sep. App. 39-40. | 0 | 0 |
| 6/16/10 | Government receives an exclusion of time through 9/24/10. | FTC Dkt. 389. | 0 | 0 |
| 9/24/10 | Government receives an exclusion of time through 9/29/10. | Sep. App. 45-46. | 0 | 0 |
| 9/29/10 | Government receives an exclusion of time through 10/22/10. | Sep. App. 48-49. | 0 | 0 |
| 10/19/10 | Judge Gettleman transfers the criminal matter for reassignment. | FTC Dkt. 435. | 0 | 0 |

[2] When the case was reassigned to Judge Guzman on October 19, 2010, a case processing error occurred where the new case number did not appear on the electronic docket until November 5, 2010. The table counts the time including and excluding the error, but there was a violation either way.

| Date | Action | Cite | Speedy Trial Days Run | |
|---|---|---|---|---|
| | | | Count of Chargeable Days | Count of Chargeable Days (Excusing Processing Error)[2] |
| 10/22/10 | The 9/29/10 exclusion of time expires. | Sep. App. 49. | 0 | 0 |
| 11/5/10 | Assignment of the matter to Judge Guzman appears on the docket of *United States v. Trudeau*. | | 14 days | 0 |
| 12/31/10 | The 70-day period from October 22, 2010 expires. | | **70 days** | 56 days |
| 1/14/11 | The 70-day period from November 5, 2010 expires. | | 84 days | **70 days** |
| 4/7/11 | The Government asserts for first time at a status hearing that the Act does not apply. | Sep. App. 61. | 167 days | 153 days |
| 11/5/13 | Trial commences. | R. III 204. | 407 days | 393 days |

The pretrial conference in this case stretched over several weeks,
involved numerous motions *in limine* and significant debate over jury
instructions. *See* R. II 626, 628; R. III 4, 5, 14, 70. Among other things, the
Court barred Trudeau from presenting certain *Natural Cures*-related
evidence and evidence about his understanding of his free speech rights to

show his understanding of the FTC Consent Order, App. 16-17, 22-23. It was undisputed that Trudeau "was not prohibited by the [FTC Consent Order] from expressing his views and opinions in the infomercials, as long as those views and opinions did not misrepresent the contents of his book." 11/7/13 Tr. 322:23-323:3.

### D. Trudeau's Trial

Trudeau's six-day jury trial began 393 chargeable days and 1,286 days after the Government accepted the referral to prosecute. The trial boiled down to two questions: (1) Did Trudeau's *Weight Loss Cure* infomercials accurately describe the *Weight Loss Cure* book, and (2) if not, did he willfully violate the FTC Consent Order?

The Government's willfulness evidence was nonexistent. Its case amounted to the FTC Consent Order, the *Weight Loss Cure* book and infomercials (transcripts and videos), and a chart comparing alleged infomercial misrepresentations with quotations from the book. 11/5/13 Tr. 42:1-20, 47-49, 52:7-24, 54-55. The only two witnesses, a dietician and a postal inspector, had no personal experience with Trudeau.

U.S. Postal Inspector Silvia Carrier simply provided foundation for the infomercials and book excerpts. 11/5/13 Tr. 42:1-20, 47-49, 52:7-24, 54-55. At the Government's direction, she simply read excerpts from the *Weight Loss Cure* infomercials and book. *See, e.g.*, 11/6/13 Tr. 73-75, 92:15-95:23. Carrier

14

admitted that the book included content supporting the same infomercial statements that she had alleged were misrepresentative of the book. 11/6/13 Tr. 153:13-14, 178:7-20. Inspector Carrier never described speaking with Trudeau, any investigation in which she reviewed e-mails or other correspondence authored by Trudeau, her understanding of how Trudeau chose the *Weight Loss Cure* infomercial content, or Trudeau's understanding of the FTC Consent Order, other than noting he signed the order.

The Government's other witness, dietician Melissa Dobbins, illustrated what the *Weight Loss Cure* book taught as its protocol. She discussed purchasing items mentioned in the book and compared *Weight Loss Cure* meals with what she recommends to clients. 11/7/13 Tr. 216:9-220:16, 231:15-233:14. Ostensibly, the Government intended her testimony to show that certain infomercial statements—that the protocol was easy, inexpensive, and not a diet—contradicted the book's contents. Like Carrier, Dobbins admitted that many suggestions of the *Weight Loss Cure* were optional or described by the book as nearly impossible to follow 100% of the time. *See, e.g.*, 11/7/13 Tr. 267:21-24, 282:4-6, 286:8-287:21. And like Carrier, Dobbins never testified that she had spoken with Trudeau or reviewed any correspondence he wrote. She did not discuss the infomercial or the FTC Consent Order.

The  only other evidence the Government relied on related to ITV Global—the company that produced the infomercials. Its evidence primarily

consisted of a purchase agreement with Trudeau granting ITV "the exclusive right to produce and market the [*Weight Loss Cure*] infomercial and to market and supply the [*Weight Loss Cure*] book through . . . infomercials." 11/7/13 Tr. 420:8-14. The agreement itself was "entered into months in advance of the [*Weight Loss Cure*] infomercials." *Id.* at 420:12-14. Although Trudeau "anticipated making money based on the stock purchase agreement," ITV never "me[t] its payment obligations." *Id*. The Government also introduced evidence that Trudeau received some publisher's royalties from retail sales. 11/8/13 Tr. 519:9-14. Though the Government attempted to prove a profit motive for misrepresenting his *Weight Loss Cure* book, it never showed a direct connection between infomercial-related sales and profit to Trudeau because Trudeau did not earn royalties from the infomercials. 11/8/13 Tr. 519:13-14.

Trudeau exercised his constitutional right not to testify or call witnesses. Accordingly, by the end of trial, no witness had presented any evidence of Trudeau's understanding of the FTC Consent Order or his decisions about the content in the *Weight Loss Cure* infomercial.

### E. Post-Trial and Sentencing

After the six-day trial, on November 12, 2013, the jury convicted Trudeau of criminal contempt. App. 34. After the court denied Trudeau's motion for judgment of acquittal, it sentenced him to ten years in prison: the

second-longest federal criminal contempt sentence in the Seventh Circuit. App. 39; *see United States v. Ashqar,* 582 F.3d 819, 822 (7th Cir. 2009) (sentencing 135 months for terrorism-related contempt); *United States v. Misenheimer*, 677 F. Supp. 1386, 1392 (N.D. Ind. 1988) (noting that ten years was harshest criminal contempt sentence on record in Seventh Circuit).

## SUMMARY OF ARGUMENT

The district court made five critical errors. *First*, the Government violated the Speedy Trial Act by not bringing Trudeau to trial within 70 days after accepting the prosecution referral. After the Government's time exclusions expired and more than 70 days had passed, it decided for the first time that the Act did not apply. Sep. App 62. Adopting the Government's rationale, the Court found that the Act was inapplicable. It held that Trudeau's contempt, and indeed all court-initiated criminal contempts, fall outside the Act's scope because they are not "information[s] or indictment[s]" under the Act. App. 6-7. It also said that Judge Gettleman's six-month cap—the same cap that Judge Guzman **simultaneously** removed to place Trudeau in jeopardy of life imprisonment—rendered Trudeau's contempt analogous to a Class B or C misdemeanor outside of the Act's "offense" definition. App. 6-7; *see* Sep. App. 31-32; R. II 362.

These positions must be rejected. Under the doctrine of judicial estoppel, the Government cannot say that the Act applies and then, after the

17

Act's period expires, change positions and argue that it did not. Judicial estoppel protects the integrity of judicial rulings by preventing inconsistent holdings by different courts on the same issues. Because the Government affirmatively and successfully asked Judge Gettleman to apply the Act to Trudeau's prosecution, it was judicially estopped from saying otherwise to Judge Guzman.

Estoppel notwithstanding, the Act applies. The district court's ruling that show cause orders are a silver bullet piercing the Act ascribes to Congress the absurd intention of removing from the Act's reach a class of defendants that could face life imprisonment—contemnors—solely because a court, and not a prosecutor, charges them. In a similar situation one century ago, the Supreme Court rejected literally interpreting a statute of limitations to exclude criminal contempt just because it was not charged by "information or indictment." *Gompers v. United States,* 233 U.S. 604 (1914). And so here too, this Court must strike down the district court's form-over-substance approach.

Nor, as the district court held, was Trudeau's contempt not an "offense" covered by the Act. All crimes other than Class B or C misdemeanors trigger the Act's protections. Under the plain language of the offense classification statute, contempt is a Class A felony because a life sentence is authorized. Even adopting the court's sentencing determination that Trudeau's contempt

was like fraud, the statutory scheme dictates treatment as a Class C felony. Or, applying the constitutional standard in *Frank v. United States*, 395 U.S. 147, 149 (1969), which classifies criminal contempt by the "penalty actually imposed," Trudeau's ten-year sentence still results in a Class C felony determination. Under none of these calculations is Trudeau's contempt a non-offense under the Act.

But even if the Court finds that the Gettleman Order's six-month imprisonment cap rendered the Act inapplicable, the Act governed because of the "gilding" doctrine. The gilding doctrine requires counting time that would have accrued under a prior charge to a later, substantively identical charge. Applying that principle here—where the Gettleman and Guzman Orders allege the same crime—results in a clear violation.

Because the Act applied, and because 71 chargeable days expired, dismissal is automatic under 18 U.S.C. § 3162. And here, all three statutory factors for dismissal with prejudice weigh in Trudeau's favor: his contempt was non-serious (despite the harsh sentence), the Government was solely responsible for the delay, and the Act's purpose would be vitiated by allowing reprosecution.

*Second*, the Court improperly instructed the jury that it could find that Trudeau acted willfully by disregarding a substantial risk that his actions would violate the law—*i.e.*, if he acted recklessly. That instruction—which

reflects current Seventh Circuit law under *United States v. Greyhound*, 508 F.2d 529 (1974)—plainly conflicts with a mountain of Supreme Court precedent requiring that "[w]hen the term 'willful' or 'willfully' has been used in a criminal statute," it is to be "read . . . as limiting liability to ***knowing*** violations." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58 n.9 (2007) (emphasis added); *see Dixon v. United States*, 548 U.S. 1, 5, (2006); *Bryan v. United States,* 524 U.S. 184, 193 (1998); *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994). This Court should acknowledge that the Supreme Court has effectively overruled *Greyhound* and require the Government to prove that a defendant actually knew his conduct was wrongful. The Government's failure to adduce evidence showing Trudeau actually knew his conduct was wrongful renders the instructional error significant enough to warrant plain error review. And this Court has recognized that plain error is appropriate where, like here, "the instruction given by the district court was a correct statement of the well-established law of this circuit" and "[a]n objection at trial therefore would not have afforded the trial judge an opportunity to consider an ambiguous point of law and to make adjustments in the instruction." *United States v. Holmes*, 93 F.3d 289, 292 (7th Cir. 1996).

*Third*, the Government failed to present sufficient evidence of Trudeau's willfulness. To establish willfulness, the Government had to prove that Trudeau knew his infomercial misrepresented his book and that he

knew he "was breaking the law" when he did so. *Dixon*, 548 U.S. at 5. It did neither. Rather, the Government relied on the *Weight Loss Cure* book and infomercial alone, presenting no evidence about Trudeau's state of mind when creating the infomercial. Nor did the Government demonstrate that Trudeau knew that his conduct fell within the FTC Consent Order's prohibitions. As a matter of law, an acquittal is demanded.

*Fourth*, the court improperly precluded Trudeau from presenting two defenses to willfulness based on its incorrect belief that Trudeau's understanding of the FTC Consent Order was "irrelevant." But evidence of Trudeau's actual mindset about the illegality of his conduct is relevant— under either the *Greyhound* or the Supreme Court's formulation of willfulness. App. 32. The court prohibited Trudeau from introducing into evidence his *Natural Cures* book, FTC-approved *Natural Cures* infomercial, and extensive correspondence with the FTC (unless he testified) to show how he interpreted the FTC Consent Order. Yet, that book and infomercial were, according to his counsel at the hearing approving the FTC Consent Order, "the first tangible example of something that is acceptable under [the infomercial] provision." Sep. App. 35. The court's ruling prevented Trudeau's counsel from using these objective facts to bolster an inference of good faith. Given the demonstrable links between *Natural Cures* and *Weight Loss Cure* infomercials, the absence of the *Natural Cures* evidence was not harmless.

Similarly, Trudeau was unable to argue through counsel that Trudeau believed (rightly or wrongly) that the First Amendment protected his expressions of his opinions and personal experiences in his infomercials because the court deemed them "irrelevant in this case even as to forming his state of mind." App. 17. The court's ruling cannot be squared with the numerous Supreme Court cases that reaffirm the relevance of a criminal defendant's understanding of his legal obligations as paramount to the willfulness inquiry.

*Finally*, this Court should exercise its supervisory prerogative over the district courts' contempt power and reduce Trudeau's excessive 10-year sentence.

## ARGUMENT

### I.    The Government Violated Trudeau's Speedy Trial Act Rights, Permitting 393 Days to Pass Before He Was Brought to Trial.[3]

To provide the accused and the public prompt justice, the Speedy Trial Act requires the Government to try him within 70 days of charging. 18 U.S.C. § 3161(c)(1) ("[T]he trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days."). Before Judge Gettleman, the Government acknowledged that duty:

---

[3] This Court reviews denials of motions to dismiss for speedy trial violations *de novo. United States v. Hemmings*, 258 F.3d 587, 591 (7th Cir. 2001).

"Your Honor, I think that because this is a criminal proceeding, the Speedy Trial Act would apply." Sep. App. 41-42. But acknowledging is not fulfilling, and on January 15, 2011—71 chargeable days after the Government accepted Judge Gettleman's referral to prosecute—Trudeau went untried. Sep. App. 39 (clock starting on Apr. 29, 2010); *see supra* at 12 (Table 1).

The Court must dismiss with prejudice for a Speedy Trial Act violation here because (1) the Act applies to Trudeau's contempt, (2) more than 70 chargeable days had elapsed without bringing to Trudeau to trial, and (3) the Government's violation was significant enough to bar reprosecution. Trudeau satisfies each prong.

## A. The Speedy Trial Act applied to Trudeau's contempt charge, either as a matter of judicial estoppel or statutory interpretation.

This Court should find that the Act applies to Trudeau's contempt for at least two reasons: *First*, the doctrine of judicial estoppel prohibits the Government from arguing to Judge Guzman that the Act did not apply, where it had already argued otherwise to Judge Gettleman.

*Second*, even if estoppel does not apply, this Court should interpret the Act to commence the speedy trial clock from the date the Government agreed to prosecute Judge Gettleman's order to Trudeau to show cause why he should not be held in criminal contempt.

**1. The Government was judicially estopped from arguing that the Act did not reach Trudeau's criminal contempt charge.**

Before Trudeau moved to dismiss under the Act, the Government sought Speedy Trial Act exclusions four times. *See supra* at 12 (Table 1). At the first request, the Government's invocation of the Act was explicit: "Your Honor, I think that because this is a criminal proceeding, the Speedy Trial Act would apply." Sep. App. 41-42. The court granted the exclusion each time. So everyone was on the same page—until the case transferred to Judge Guzman and 70 Government-chargeable days passed while Trudeau awaited trial. But the Government's new, incorrect position came too late—at an April 7, 2011 status hearing. Sep. App. 62.

"[W]here [the Government] assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [it] may not thereafter, simply because [its] interests have changed, assume a contrary position, especially if it be to the prejudice of the [opposing] party who has acquiesced[.]" *Zedner v. United States*, 547 U.S. 489, 504 (2006) (citations omitted). Judicial estoppel "protect[s] the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Levinson v. United States,* 969 F.2d 260, 264 (7th Cir.1992); *see also New Hampshire*, 532 U.S. 742, 750 (2001) (explaining that judicial estoppel is meant to prevent "the perception that either the first or the second court was

misled."). Here, because the Government took contrary positions, the Court should find that the Act covered Trudeau's contempt charge.

### 2. As a matter of statutory interpretation, the Act applies.

The district court erroneously held that (1) the Act did not apply to the show cause orders, and (2) even if it did, the Act's clock did not start from the issuance of the Gettleman Order because the six-month imprisonment cap analogized it to a Class B or C misdemeanor. App. 6-7. These errors allowed the Government to bait and switch a greater punishment for the same offense after the first charge should have been dismissed.

*First*, the district court's ruling that show cause orders fall outside the Act's "information or indictment" language contravenes the reasoning of the Judicial Conference, Supreme Court case law, and canons of statutory construction. And most importantly, it ignores the absurdity of treating identically situated alleged contemnors differently based solely on what document charges their contempt.

*Second*, Trudeau's contempt charge started the clock on April 29, 2010, when the Government accepted Judge Gettleman's prosecution referral. Under the Gettleman Order, Trudeau's contempt charge did not fall within the narrow set of crimes outside the Act's purview—*i.e.*, Class B or C misdemeanors. Criminal contempt can be classified as a felony falling within the Act under any of three approaches: (1) Criminal contempt is a life-

25

imprisonable offense, and thus a Class A felony, even when a court limits its discretion to a lower term; (2) because the court analogized Trudeau's criminal contempt to wire fraud, it should have treated Trudeau's contempt as a Class C felony; or (3) applying the constitutional standard—which looks at the penalty actually imposed—Trudeau's ultimate 10-year sentence rendered his contempt a Class C felony. In short, all roads lead to finding that the contempt charged in the Gettleman Order was an "offense."

Even if the Court rejects these interpretations when Trudeau's punishment was capped at six months, once that cap was removed, Trudeau's criminal contempt was undoubtedly an offense. Under gilding and in the spirit of the Act, the Speedy Trial Act clock began running when the Government accepted prosecution because the Government's "new charge" is the same as the "old charge." Any contrary reading would allow the Government to circumvent the Speedy Trial Act's carefully considered protections.

> a. **Criminal contempt show cause orders are "information[s] or indictment[s]" under the Speedy Trial Act.**

Giving the Act's statutory terms "information" and "indictment" more weight than they were worth, the court deemed the Act irrelevant because Trudeau was charged by a show cause order. 18 U.S.C. § 3161(c)(1). But the court's ruling contravenes Supreme Court case law interpreting nearly

identical language, court-initiated criminal contempt cases analyzing the Act,

on-point guidance by Committee on the Administration of the Criminal Law

of the Judicial Conference of the United States ("Judicial Conference"),

Congress' purpose in enacting the Act, the correct application of the plain

language canon of construction to avoid absurd results, and the constitutional

avoidance doctrine.

The Supreme Court has repeatedly commanded courts to avoid absurd

results brought on by hypertechnical, logically flawed reasons. Quite

eloquently, the Court declared:

> When [the plain] meaning has led to absurd or futile
> results, however, this Court has looked beyond the
> words to the purpose of the act. Frequently, however,
> even when the plain meaning did not produce absurd
> results but merely an unreasonable one "plainly at
> variance with the policy of the legislation as a whole"
> this Court has followed that purpose, rather than the
> literal words. When aid to construction of the
> meaning of words, as used in the statute, is available,
> there certainly can be no "rule of law" which forbids
> its use, however clear the words may appear on
> "superficial examination."

*United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543-44 (1940) (footnotes

omitted); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575

(1982) ("[I]nterpretations of a statute which would produce absurd results are

to be avoided if alternative interpretations consistent with the legislative

purpose are available.").

The district court's ruling arbitrarily treats *Government*-indicted contemnors differently from *court*-indicted contemnors. Facing a similar absurdity, the Supreme Court held that the statute of limitations that applied only to charges where "the indictment is found or the information is instituted within three years" covered criminal contempts initiated by a non-prosecutor (there, a congressional committee). *Gompers v. United States*, 233 U.S. 604, 611 (1914). The Court rejected the Government's argument that the statute "limit[ed] the offenses given the benefit of the act to those usually prosecuted in that way." *Id*. Instead, it noted that "indictment and information" were just "the usual modes by which [proceedings] are begun," and found "no more reason for prolonging the period of liability when" courts initiate proceedings than "where the same offense is proceeded against in the common way." *Id*. at 611-12. In fact, the Court felt so strongly that "punish[ing] for contempt must have some limit in time" that "[e]ven if the statute [did] not cover the case by its express words,. . . a rule should be laid down . . .  by th[e] [C]ourt." *Id*. at 612. And to formulate that rule, the Court "rel[ied] on the policy of the law" "[b]y analogy[.]" *Id*. That same logic applies here.

A number of courts and the Judicial Conference have recognized as much. Advising on the issue presented here, the Judicial Conference concluded that, "[c]onsidering the entire statute in the light of its purposes,

. . . the act does apply to contempts prosecuted [on notice], and that the notice on which prosecution is based should be treated as an information for purposes of calculating the 70-day time limit to trial." 106 F.R.D. 271, 310 (1979). This conclusion reflects the judiciary's wisdom and is "entitled to [this Court's] respectful consideration." *See United States v. Dawson*, 434 F.3d 956, 958 (7th Cir. 2006) (citations omitted). And though rare, when alleged contemnors charged by order to show cause have asked courts to find a Speedy Trial Act violation, courts have not questioned the Act's applicability. *See, e.g.*, *In re Betts*, 730 F. Supp. 942, 944 (C.D. Ill. 1990), *rev'd sub nom.*, *Matter of Betts*, 927 F.2d 983 (7th Cir. 1991) (order to show cause); *United States v. Richmond*, 312 Fed. App'x 56, 57 (9th Cir. 2009) (arrest order); *United States v. Moncier*, 2:07-CR-00040, 2010 WL 1904957 (E.D. Tenn. May 10, 2010) (notice issued from court).

By contrast, holding that the Act does not reach contempts on notice would frustrate Congress's intent. *E.g.*, *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (citations omitted) (rejecting "literal application of the statute" where it was "demonstrably at odds with the intentions of its drafters"). Congress adopted the Act to set clear time limitations on the Government in a straightforward statutory scheme "in order to give real meaning to the Sixth Amendment right" to a speedy trial. H.R. Rep. No. 96-390, at 3 (1979); A. Partridge, Legislative History of Title I of the Speedy

Trial Act of 1974 (Fed. Judicial Center 1980) at 15 (citing 1974 House Comm. Rep. 11). And Congress never contemplated exempting contempts.

Finally, the constitutional avoidance doctrine requires interpreting the Act to apply to all criminal contempt charges, regardless of how they are initiated. "[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [the court's] duty is to adopt the latter." *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909) (quoted in *United States v. Prevatte*, 300 F.3d 792, 798 (7th Cir. 2002)). The district court's interpretation reaches an arbitrary and capricious result—that defendants charged with the ***same*** crime—out-of-court criminal contempt—and facing the ***same*** punishment—life imprisonment—have different procedural protections based on who initiates the charges. That outcome at least *implicates* Trudeau's Fifth and Fourteenth Amendment due process and equal protection rights. Accordingly, to avoid questioning the Act's constitutionality, to effect the Act's broad aims, and to reject an absurd result, the Court should apply the Act equally to court- and Government-initiated criminal contempt charges.

### b. Trudeau's contempt charge—under both the Gettleman Order and the Guzman Order—was an offense starting the speedy trial clock when the Government accepted prosecution.

#### i. Trudeau's contempt charge was a Class A or Class C felony under the Act.

Criminal contempt, by statute, may be punished by life imprisonment. 18 U.S.C. § 401(3). Ordinarily, life imprisonable crimes are Class A felonies. *Id.* §3559(a)(1). No one disputes that the Act applies to any "violation of any Act of Congress . . . (other than a Class B or C misdemeanor)"—that is, to all felonies. *See* 18 U.S.C. § 3172 (defining "offense"). Therefore, under the plain statutory text, the Act applies to Trudeau's crime. But the court held that because Judge Gettleman exercised his discretion to consider a term of imprisonment up to six months, by analogy, Trudeau's criminal contempt was a Class B misdemeanor. App. 8; *see* 18 U.S.C. § 3559(a)(7). That decision ignores that no matter how a court exercises its sentencing discretion, criminal contempt is and always remains an offense punishable by life imprisonment.

The district court faltered because it acted as if Judge Gettleman's sentencing grace mattered. Under section 3559(a), the relevant penalty for determining whether a crime is a Class A felony or a Class B misdemeanor is "the maximum term of imprisonment authorized." And as section 3559(b) makes clear, the requisite authorization is the "maximum term of

imprisonment . . . authorized by the law describing the offense." Here, the law "authorizes" life imprisonment.

The outcome here is the only proof necessary that the district court's analysis of "offense" is wrong. If Trudeau **really** faced a maximum of six months in prison, he would not be appealing a ten-year sentence. And if he did not face a maximum of six months in prison, but rather life imprisonment, he was entitled to his Speedy Trial Act rights.

Even if one looks at "the penalty actually imposed"—the touchstone of the constitutional determination of whether a contempt is petty or serious— the result is the same. *Frank*, 395 U.S. at 149; *see United States v. Zakharia*, 418 Fed. App'x 414, 419 (6th Cir. 2011) (applying *Frank* contempt for sentence classification purposes); *United States v. Cohn*, 586 F.3d 844, 848 (11th Cir. 2009) (disagreeing that section "401 falls within the ambit of § 3559's classification scheme"). Because Trudeau ultimately received a ten-year sentence for his contempt, *Frank* treats his crime as a Class C felony. *See* 18 U.S.C. §3559(3) (treating crimes permitting ten-year sentences as Class C felonies).

The Ninth Circuit takes a slightly different approach that also results in treating Trudeau's contempt as a Class C felony. When sentencing for criminal contempt, it engrafts the sentencing classification of the most analogous crime. *See United States v. Broussard*, 611 F.3d 1069, 1072-73 (9th

Cir. 2010). Here, the court determined at sentencing that Trudeau's contempt was most analogous to fraud. 3/17/2014 Tr. 52:24-53:6 ("[T]he guidelines require the Court to look to the fraud guidelines to establish the sentencing range."). Trudeau's contempt would be a Class C felony. *See* 18 U.S.C. § 3559(3); *id.* § 1343 (statutory maximum of 20 years imprisonment for wire fraud).

Reading "offense" literally comports with Congress's goal of giving teeth to the Sixth Amendment's Speedy Trial right. *See United States v. Clark,* 754 F.3d 401, 405 (7th Cir. June 6, 2014). Any definition of "offense" that exempts a criminal contempt leading to a ten-year sentence leaves those teeth with a gaping cavity. And the Judicial Conference agrees: when interpreting the Act to apply to contempts, it excluded only contempts to be "punished summarily," "since that portion of the rule does not contemplate a trial." 106 F.R.D. at 310. But where the potential punishment exceeds six months (like here), a trial is constitutionally required, and the clock should have begun from the Gettleman Order. *See Bloom v. Illinois*, 391 U.S. 194, 211 (1968).

        ii.    **Because Trudeau's "new" life-imprisonable contempt charge merely gilded his "prior" six-month charge, his Speedy Trial rights were still violated.**

Even if the six-month-capped contempt charge fell outside the Act, the speedy trial clock still began when the Government accepted Judge

Gettleman's referral on April 19, 2010. Sep. App. 39. That's because the original contempt charge was identical to the amended charge, and so under the well-established doctrine of "gilding," the time under the original charge counted.

When "the crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them are not reasonably explicable," the initial arrest starts the speedy trial clock. *United States v. DeTienne*, 468 F.2d 151, 155 (7th Cir. 1972) (applying gilding to constitutional speedy trial guarantee); *see also United States v. Watkins*, 339 F.3d 167, 175-76 (3d Cir. 2003); *United States v. Bailey*, 111 F.3d 1229, 1236-37 (5th Cir. 1997); *United States v. Andrews*, 790 F.2d 803, 809 (10th Cir. 1986); *United States v. Napolitano,* 761 F.2d 135, 138 (2d Cir. 1985); *United States v. Romero*, 585 F.2d 391, 398 (9th Cir. 1978) (all analyzing gilding in Speedy Trial Act context). To determine whether a charge has been gilded, a court "examin[es] the elements of the offense" and asks "whether each provision requires proof of a fact which the other does not." *United States v. Martinez-Espinoza*, 299 F.3d 414, 417 (5th Cir. 2002) (applying *Blockburger v. United States,* 284 U.S. 299, 304 (1932) "same element" test in gilding analysis); *e.g.*, *Andrews*, 790 F.2d at 809 (holding that adding misprision of a felony merely gilds a conspiracy charge). Gilding can apply even if the initially charged crime was a misdemeanor not

34

originally subject to the Act's provisions. *See Bailey*, 111 F.3d at 1236-37 (considering whether misdemeanor gilded into felony by mere difference in valuation of weapon).

Trudeau's unusual scenario is the epitome of gilding: he faced precisely the same contempt charge under the Gettleman and Guzman Orders. And the Government cannot dispute that the contempt charged under the Guzman Order is an "offense" as defined by the Act. Nor can it credibly argue that the change in judges justifies the different accusatorial dates. *See DeTienne*, 468 F.2d at 155. Accordingly, under the orders, the speedy trial clocks began on the same day, April 29, 2010, ended on the same day, January 14, 2014, leading to the same violation. That violation warrants dismissal.

Likewise, the Act prohibits the Government from resetting the speedy trial clock by dismissing then refiling a charge with a superseding indictment or reindictment "for the same offense, or any offense required to be joined with that offense[.]" 18 U.S.C. § 3161(h)(5); *see United States v. Rojas-Contreras,* 474 U.S. 231, 239 (1985) (Blackmun, J., concurring) (explaining that 70-day clock is not reset on reindictment); *United States v. Hemmings*, 258 F.3d 587, 588 (7th Cir. 2001) (superseding indictment); *United States v.*

*Menzer*, 29 F.3d 1223, 1228 (7th Cir. 1994) (reindictment).[4] This only confirms that Congress intended the gilding doctrine to reach cases like Trudeau's.

Gilding is necessary to prevent circumventing the Act's protections. Without gilding, the Government could undercharge its case at the outset, delay for an interminably long time, then increase the potential punishment—and thus, trigger the Act—only shortly before trial. This situation would leave defendants without recourse to have their case tried promptly. Because the Government had its 70 days to try Trudeau and failed to do so, Trudeau was entitled to dismissal.

**B. Once this Court finds the Speedy Trial Act applies, there is no question that the Government did not prosecute Trudeau within the Act's 70-day window.**

The Government cannot dispute that it failed to bring Trudeau to trial until 393 Government-chargeable days had passed. The clock started running on April 29, 2010—the day the Government agreed to prosecute Judge Gettleman's criminal contempt charge. Sep. App. 39; 18 U.S.C. § 3161(c)(1) (70-day clock begins on "the filing date (and making public) of the information or indictment, or from the date the defendant has appeared

---

[4] Congress used "joined with that offense" as a term of art to incorporate the *Blockburger* test. *United States v. Rein*, 848 F.2d 777, 779-81 (7th Cir. 1988); Partridge at 132.

before a judicial officer of the court in which such charge is pending."); *see*

*United States v. Rojas-Contreras*, 474 U.S. 231, 235 (1985). From there, the

Government had 70 days (plus exclusions)—*i.e.*, until January 14, 2011—to

bring Trudeau to trial. 18 U.S.C. § 3161(c)(1); *see supra* at 12 (Table 1). Its

failure to do so until November 5, 2013—nearly two full years later—

requires dismissal. *Id.*

### C. Dismissal with prejudice is appropriate.

Dismissal with prejudice is warranted. This Court determines whether

to dismiss with prejudice by weighing "[1] the seriousness of the offense; [2]

the fact and circumstances of the case which led to dismissal; and [3] the

impact of a reprosecution on the administration of the [Act] and on the

administration of justice." 18 U.S.C. § 3162(a), s*ee also United States v.*

*Janik*, 723 F.2d 537, 546 (7th Cir. 1983). Here, each factor weighs in favor of

the dismissing with prejudice: Trudeau's offense is not "serious" for these

purposes under the Act, Trudeau is blameless for the nearly six-month delay

in prosecution, and reprosecution would send the public the message that the

Act is something the Government could lightly disregard.

*First*, in the scheme of federal crimes, Trudeau's criminal contempt was

a relatively non-serious offense. Under the worst view to Trudeau, he ignored

the Court's order by embellishing his book to sell additional copies, to the

tune of causing loss of, at most, $35 per person.[5] This falls below the

threshold for a serious crime, as the following chart shows:

| Serious Offenses | Non-serious Offenses |
|---|---|
| **Murder.** *United States v. Fountain*, 840 F.2d 509, 512 (7th Cir. 1988) (first degree murder). | **Parental Kidnapping.** *United States v. Bundu*, 479 F. Supp. 2d 195, 199 (D. Mass. 2007). |
| **Drug distribution.** *United States v. Killingsworth*, 507 F.3d 1087, 1089 (7th Cir. 2007) (possession with intent to distribute cocaine). | **Drug dealing with no drugs present.** *United States v. Brown*, 183 F.3d 1306, 1308 (11th Cir. 1999). |
| **Robbery.** *United States v. Smith*, 576 F.3d 681, 689 (7th Cir. 2009) (armed bank robbery). | **Mail theft.** *United States v. Caparella*, 716 F.2d 976 (2nd Cir. 1983). |

Surely, misrepresenting a book on television is less serious than a

parental kidnapping. Finding the allegations against Trudeau to be non-

serious is particularly appropriate given that Judge Gettleman—the judge

who entered the FTC Consent Order and who presided over Trudeau's 2009

civil contempt trial—referred the case with a six-month imprisonment cap.

Gettleman Order. Sep. App. 31.

*Second*, the Government was responsible for the nearly six-month delay

in prosecution. *See Bloate v. United States*, 559 U.S. 196, 214-15, (2010) ("In

ruling upon a motion to dismiss under the Act, a district court should

consider, among other factors, the party responsible for the delay."). And even

---

[5] Trudeau does not concede **any** of these facts are accurate or supported by the evidence.

a substantial violation, tied to negligent government action, suffices to support dismissal with prejudice. *E.g.*, *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984) (holding that a court-caused violation of the Act requires a dismissal with prejudice).

*Finally*, reprosecution sends the wrong message to the community and impairs the administration of justice and the Act. 18 U.S.C. § 3162(a). In general, this factor weighs heavily in favor of dismissal with prejudice because it encourages the Government to be attentive to its cases. S*ee United States v. Arango*, 879 F.2d 1501, 1508 (7th Cir. 1989). "The purpose of the Speedy Trial Act is not only to protect a defendant's constitutional right to a speedy trial, but also to serve the public interest in bringing prompt criminal proceedings." *United States v. Moss*, 217 F.3d 426, 432 (6th Cir. 1999).

Given that the charged offense was not serious, that the Government was solely responsible for the three-year delay, and that reprosecution would vitiate the purposes of the Speedy Trial Act, this Court should dismiss with prejudice.

## II.    The District Court Improperly Permitted the Jury to Find Willfulness Without Evidence That Trudeau Actually Knew That His Conduct Was Unlawful.

Willfulness is the touchstone element distinguishing criminal contempt from civil contempt. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (explaining that civil contempt "is remedial, [so] it matters not with

what intent the defendant did the prohibited act"). Repeatedly, the Supreme Court has emphatically found that willfulness requires showing that the defendant acted with actual knowledge that his conduct was unlawful. *See infra* at Part II.A.

This Circuit, however, permits the Government to prove willfulness by showing mere recklessness—that a defendant should have reasonably been aware that his conduct was wrong. *United States v. Greyhound*, 508 F.2d 529, 531-32  (7th Cir. 1974).  This case presents an excellent opportunity for the Court to revisit *Greyhound* and set actual knowledge of illegality as the sole means of proving willfulness.[6] And because the Government presented no evidence of actual knowledge, a judgment of acquittal was required.

### A. Supreme Court case law demonstrates that in criminal contempt cases, willfulness requires a showing of actual knowledge.

In 1972, this Court defined willfulness in the criminal contempt context as "a volitional act done by one who knows or should reasonably be aware that his conduct is wrong." *United States v. Seale*, 461 F.2d 345, 368 (7th

---

[6] *See* 7th Cir. R. 40(e) (allowing panels to explicitly overrule prior panel decisions after circulating opinion); *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002) (same).

Cir. 1972).[7] That definition, which the Court reaffirmed two years later in *United States v. Greyhound*, includes two prongs: an actual knowledge standard ("who knows") and a recklessness standard ("should reasonably be aware"). 508 F.2d 529, 531-32 (7th Cir. 1974); *see United States v. Mottweiler*, 82 F.3d 769, 771 (7th Cir. 1996) (describing *Greyhound* as "mak[ing] recklessness a sufficient mental state" for criminal contempt). This Court should overrule *Seale* and *Greyhound* and adopt the actual knowledge standard as the sole means of proving willfulness.

The Supreme Court has "consistently held," "[w]hen the term 'willful' or 'willfully' has been used in a criminal statute, [it] regularly read the modifier as limiting liability to ***knowing*** violations." *Safeco*, 551 U.S. at 58 n.9 (emphasis added) (contrasting with violations that are "reckless ones"); *e.g.*, *Dixon*, 548 U.S. at 5 ("[T]he term 'willfully' in § 924(a)(1)(D) requires a defendant to have 'acted with knowledge that his conduct was unlawful.'"); *Bryan,* 524 U.S. at 193 (for willfulness, "[t]he jury must find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful."); *Ratzlaf*, 510 U.S. at 149 ("To

---

[7] The Seventh Circuit, like every other Circuit, has judicially engrafted the willfulness requirement onto criminal contempt. *United States ex rel. Porter v. Kroger Grocery & Baking Co.*, 163 F.2d 168, 173 (7th Cir. 1947) (noting that "a specific wrongful intent, that is, actual knowledge of the existence of obligation and a wrongful intent to evade it, is of the essence.").

41

convict Ratzlaf . . . , the jury had to find he knew the structuring in which he engaged was unlawful."); *Cheek v. United States*, 498 U.S. 192, 202 (1991) (holding that "[i]n the end, the issue is whether . . . the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable"). By contrast, "where willfulness is a statutory condition of civil liability, [the Court has] generally taken it to cover not only knowing violations of a standard, but reckless ones as well"—a definition "different" than that "in the criminal law." *Safeco*, 551 U.S. at 57, 58 n.9.

*Dixon* is particularly instructive. There, the Court held that a defendant bears the burden to prove duress (*i.e.*, involuntary coercion) because duress does not negate willfulness. 548 U.S. at 17. The Court explained that willfulness requires *knowledge* of both the underlying conduct and its unlawfulness: "[T]he Government bore the burden of proving beyond a reasonable doubt that petitioner ***knew she was making false statements*** in connection with the acquisition of firearms and that she ***knew she was breaking the law*** when she acquired a firearm while under indictment." *Id.* at 5-6 (emphasis added). In other words, *Dixon* teaches that there must be actual knowledge, not criminal reckless, to establish willifulness.

In light of *Bryan, Cheek*, *Dixon*, and *Safeco*, which all require actual knowledge of a violation for willfulness, this Court should hold that *Greyhound* and *Seale* have been effectively overturned.

**B. Under the correct willfulness standard, the district court's willfulness instruction was plain error resulting in severe prejudice to Trudeau.**

Here, the jury instruction repeated the *Greyhound* standard verbatim. App. 32. The court also defined the requisite "reasonable awareness" as criminal recklessness: "A person should reasonably be aware that his conduct is wrongful if he is conscious of a substantial and unjustifiable risk that the [violation of the FTC Consent Order] will come to pass, and he disregards that risk." 11/12/13 Tr. 677:12-16; Sep. App. 72; *see Mottweiler*, 82 F.3d at 771. Comparing the court's instruction to Supreme Court caselaw, the mistake is obvious.

This case presents a paradigm case for plain error. This Court's review is warranted when "(1) there is 'an error,' (2) the error is 'plain,' and (3) the error 'affect[s] substantial rights.'" *Henderson v. United States*, 133 S. Ct. 1121, 1123 (2013) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)); *see* Fed. R. Crim. P. 52(b). *First*, Trudeau has already shown error—the improper inclusion of a recklessness willfulness prong. *See supra* at 40-43. *Second*, "[n]o one doubts that an [unpreserved] error" will be plain as long as the "trial court's decision was plainly incorrect at the time it was made."

*Henderson*, 133 S. Ct. at 1127. The battery of Supreme Court cases makes the conflict with the Seventh Circuit apparent.

*Third*, the instructional error affected Trudeau's substantive rights. A "failure to instruct accurately with respect to an essential element of the offense is a serious matter requiring the careful scrutiny of the court," and, "in general," "constitutes plain error." *Holmes*, 93 F.3d at 293 (citing *United States v. Kerley*, 838 F.2d 932, 939 (7th Cir. 1988)). The "substantial rights" inquiry has taken many forms. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (asking whether error is "highly prejudicial"); *United States v. Young*, 470 U.S. 1, 16 n.12 (1985) (asking if error results in "a miscarriage of justice"); *Hamling v. United States*, 418 U.S. 87, 145 (1974) (asking whether error may have "materially affected the jurors' deliberations" justifying reversal); *United States v. Olano*, 507 U.S. 725, 732 (1993) (asking if error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."). Trudeau's circumstances satisfy them all.

The prejudice to Trudeau resulting from the erroneous *mens rea* standard is evident. Instead of having to prove Trudeau's wrongful mental state, the Government could rely on the jury to draw conclusions about Trudeau's disregard of an objective risk from no more than the FTC Consent Order, the infomercials, and the *Weight Loss Cure* book. And as discussed more *infra* at Part III, that's precisely what the Government did. It presented

no evidence that Trudeau actually knew his conduct was wrongful. At best, the Government's case hinged on the jury's ability to infer from the infomercial and book alone that Trudeau should have known that certain statements in his infomercial were misrepresentations and thus violated the consent order. But Trudeau never took the stand, and the Government presented no e-mails, correspondence, or secret confessions demonstrating that he intended to violate the FTC Consent Order. As explored below, the evidence that he tried to conform his conduct to the order—evidence of good faith—was erroneously excluded. Accordingly, the jury must have rested its conviction on the reckless willfulness standard only appropriate in civil cases. *See*, *e.g.*, *Safeco.*, 551 U.S. at 58 n.9.

The Government cannot rely on the district court's good faith instruction sufficient to minimize the damage. In fact, it probably confused the jury even more. After the willfulness instruction, the court told the jury:

> If the defendant acted in good faith, then he lacked the wilfulness required to prove the offense of contempt with which he is charged. The defendant acted in good faith if, at the time, he honestly believed that his statements in the infomercials did not violate the court order.

11/12/13 Tr. 677:20-24. This was certainly a correct statement of the law, because logically Trudeau could not have both *believed* his actions to be lawful and *known* that his actions were unlawful. But what if the jury found

45

that Trudeau believed his statements did not violate the FTC Consent Order (*i.e.*, found good faith), and also found that he was "conscious of a substantial and unjustifiable risk" that he would violate the FTC Consent Order, and disregarded that risk (*i.e.*, found incorrect *Greyhound* willfulness)? Which instruction would it follow—the definition of willfulness or good faith? When something as important as the critical element distinguishing criminal contempt from civil contempt is in serious question, this Court should have no problem concluding that Trudeau was prejudiced—especially because the Court excluded Trudeau's evidence of good faith. *Holmes*, 93 F.3d at 296 (reversing where general verdict made it impossible to know whether jury relied on erroneous jury instruction); *see infra* at Part III.

*Finally*, defense counsel's lack of objection here was understandable because the instruction reflected existing Seventh Circuit precedent. When a district court is faced with circuit law that apparently conflicts with Supreme Court precedent, the court is required to follow the Circuit's precedent until that law is overturned. *Dixon*, 548 U.S. at 4 ("[T]he trial court, correctly finding itself bound by Circuit precedent, denied petitioner's request."). Even had defense counsel objected and the district court agreed that the instruction was wrong, the court was still powerless to reject the instruction.

In *Holmes*, this Court granted plain error under similar circumstances:

46

> At the time of trial, the instruction given by the
> district court was a correct statement of the well-
> established law of this circuit. An objection at trial
> therefore would not have afforded the trial judge an
> opportunity to consider an ambiguous point of law
> and to make adjustments in the instruction. The law
> of the circuit dictated the content of the instruction.

93 F.3d 289 at 292.

So too here. Because the instruction subjected Trudeau to an erroneous willfulness standard, the Court should grant plain error review and reverse Trudeau's conviction.

## C. Trudeau is entitled to a judgment of acquittal because the Government presented no state of mind evidence.

Trudeau's case never should have even made it to the jury because the Government presented no evidence to show that Trudeau actually *knew*—and not just recklessly disregarded a substantial risk—that his conduct was wrongful.[8] Armed with no more than the *Weight Loss Cure* book, infomercials, and a purchase agreement that did not promise royalties, the jury could only speculate. On *de novo* review, this Court should find that no "reasonable jury considering the evidence in the light most favorable to the government could have found" willfulness "beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013).

---

[8] Trudeau does not concede that the evidence was even sufficient to meet the incorrect *Greyhound* standard.

47

The jury had no direct evidence of Trudeau's mental state. 11/8/13 Tr.
521:3-4. The Government can produce circumstantial evidence to show
willfulness, but in doing so, the Government "may not prove its case . . . with
conjecture camouflaged as evidence" by relying on guesswork or an
unsupported, tenuous chain of inferences. *Jones*, 713 F.3d at 340 (citations
omitted); *id.* at 352 ("If a necessary inference relies on speculation, it is not
reasonable and not permitted."). And where "the jury would have to choose
between two equally plausible inferences"—*i.e.*, where the evidence is in
"equipoise"—the Government has not presented a sufficient case either
because "the jury necessarily would have to entertain a reasonable doubt."
*United States v. Johnson*, 592 F.3d 749, 755 (7th Cir. 2010).

The Government had to prove (1) that Trudeau knew his infomercial
misrepresented his book, and (2) that he knew he "was breaking the law" at
that time. *Dixon*, 548 U.S. at 5-6. It showed neither. According to the
Government, it satisfied its burden by showing that Trudeau "knew that a
federal judge had ordered him not to lie about his books in infomercials, and
then [Trudeau] made infomercials in which he lied about one of his books."
R. III 268. The problem for the Government is that there is no *res ipsa*
willfulness. *See United States ex rel. Porter v. Kroger Grocery & Baking Co.*,
163 F.2d 168, 175 (7th Cir. 1947) (finding act itself, without more, insufficient
to prove willfulness). It was up to the Government to show that Trudeau

made a knowing misrepresentation. Given the dearth of evidence, the jury

could only speculate why Trudeau said what he said. The following chart

shows a few of many equally plausible inferences:

| Accidental: | Trudeau left his glasses at home and misread a teleprompter. |
|---|---|
| Negligent: | The teleprompter was loaded with a prior version of the script that Trudeau had subsequently corrected. |
| Reckless: | Trudeau didn't use a script; he just performed the interview and spoke extemporaneously about the book, without having read it for a long time. |
| Knowing: | Trudeau read his book the night before, thought no one would buy it, and said something different specifically to sell the book. |

Only the last one is a basis for willfulness. Yet, the Government gave

the jury no rope to climb out of the proverbial pit and determine what mental

state Trudeau possessed. The Government presented no communications

with Trudeau, no circumstances surrounding the infomercial's creation, no

testimony by witnesses with any personal knowledge of Trudeau's activities

(including the on-screen interviewers, producers, or scriptwriters). This lack

of evidence is particularly stark given that in the earlier civil trial there was

live testimony and the Government received significant discovery.

The Government's evidence on the second willfulness inquiry—that

Trudeau knew he was breaking the law—was equally lacking. Trudeau knew

that the FTC Consent Order prohibited him from misrepresenting the *Weight*

*Loss Cure* book in an infomercial. But that's not the end of the story, and the Government never proved more. As Trudeau will show, had he been allowed to present his defenses, he could have shown that he attempted to conform his conduct to the order—the *opposite* of knowing that he was "breaking the law." But the court prohibited Trudeau's counsel from mentioning the First Amendment or admitting evidence that would have supported an inference that Trudeau believed the First Amendment allowed him to share his personal experiences and opinions. App. 16-18; *see also infra* at Part III.B. It also precluded him from demonstrating his state of mind through evidence of his interactions with the FTC about a different infomercial that the FTC approved under the very provision he was convicted of violating. *See infra* at Part III.A. In short, the jury had no way to conclude that Trudeau wished to violate the order.

The Government's closest attempt to prove willfulness was its reliance on attenuated motive evidence—that Trudeau *might* be paid money already owed to him if he could sell more books through infomercials, and that he *might* sell more books by embellishing than by dryly describing them. *See* 11/12/13 Tr. 561:7-11, 667:12-22. A reasonable jury could not go so far: it would have to find, detached from any evidence (1) that Trudeau, already a #1 *New York Times* bestselling author, believed that he could make more money if he exaggerated the book; (2) that ITV, the production company

which owed Trudeau money, would pay him if it made additional profits from his infomercials; and (3) that Trudeau decided to misrepresent his book to further its sales. But "[e]ach step in the inferential chain must be supported by evidence that allows the jury to 'draw reasonable inferences from basic facts to ultimate facts.'" *Jones*, 713 F.3d at 340 (citations omitted). Here, the Government missed a few.

The district court's opinion adds another fallacious rationale for willfulness: that the jury could have found willfulness because Trudeau's "speech patterns, manner of delivery, and eagerness to engage the audience[] all suggest that he fully understood what he was doing." App. 38. This too is a red herring, because Trudeau could have been excited for any number of reasons, like the opportunity to be on television again or his devotion to the weight loss protocol. Indeed, as his infomercial says, he lost 45 pounds quickly—an experience he could be eager to share. *E.g.*, Gov. Ex. 3A at 8. Because no reasonable jury could have found that Trudeau acted willfully, the district court should have granted Trudeau's motion for acquittal.

## III.  A New Trial Is Warranted Because the District Court Misapplied the Willfulness Standard.

Even if the *Greyhound* standard were the correct standard for willfulness, the court misapplied it here. To prove Trudeau violated the law willfully, as the Supreme Court said in *Cheek*, the Government must

"negat[e] a defendant's claim of ignorance" because an allegedly willful

violator "cannot be aware that the law imposes a duty upon him and yet be

ignorant of it, misunderstand the law, or believe that the duty does not exist."

498 U.S. at 202. Trudeau's willfulness jury instruction included actual and

constructive knowledge. App. 28-33. But the district court twice prohibited

Trudeau's counsel from presenting evidence demonstrating Trudeau's

understanding of the contours of the FTC Consent Order's misrepresentation

clause. Those decisions were abuses of discretion, and when considered

cumulatively, amount to more than harmless error. *See Taylor v. Kentucky*,

436 U.S. 478, 488 n.15 (1978) (finding cumulative error to warrant new trial);

*United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001) (cumulative error);

*United States v. Oros*, 578 F.3d 703, 707 (7th Cir. 2009) (abuse of discretion

standard).

　　*First*, contrary to *Cheek* and *Dixon*, the district court prevented

Trudeau from presenting the FTC-approved *Natural Cures* infomercial—an

infomercial identified as the "first tangible example of something that is

acceptable under [the infomercial] provision." Sep. App. 35. Surely this

evidence, as well as the also-excluded *Natural Cures* book and related,

extensive FTC correspondence, was at least relevant to show Trudeau's

understanding of the consent order, if not to support an inference that

Trudeau patterned the *Weight Loss Cure* infomercial off the *Natural Cures*

infomercial. And *second*, the district court said that Trudeau's belief that the First Amendment protected his opinions in the interview was "not relevant . . . and doesn't go to willfulness or good faith." Sep. App. 69. Because "forbidding the jury to consider evidence that might negate willfulness . . . raise[s] a serious question under the Sixth Amendment," a new trial is appropriate. *Cheek*, 498 U.S. at 203-04.

### A. The district court improperly prohibited Trudeau from arguing that the FTC-approved *Natural Cures* infomercial was relevant to his understanding of the FTC Order.

Violating Trudeau's constitutional right to present a defense, the district court held that Trudeau could not introduce his *Natural Cures* book and infomercial and a series of correspondence with the FTC applying the FTC Consent Order to the *Natural Cures* infomercial (collectively, the "*Natural Cures* Evidence") because it was irrelevant. App. 22-23. But, as this Court well knows, "[t]he standard for relevance" "is a liberal one" because "[e]vidence is relevant even if it only slightly or marginally alters the likelihood of a consequential fact." *Wilson v. City of Chicago*, 2014 WL 3397697 at *2 (7th Cir. July 14, 2014); *United States v. Leonard-Allen*, 739 F.3d 948, 956 (7th Cir. 2013); *see generally* Fed. R. Evid. 401. Under that standard, Trudeau's state of mind—and consequently, the *Natural Cures* Evidence—was key to willfulness.

In particular, the *Natural Cures* Evidence supports the defense's theory that Trudeau relied on his interactions with the FTC on *Natural Cures* to inform him of the boundaries of the FTC Consent Order's misrepresentation clause while designing the *Weight Loss Cure* infomercial. 11/7/13 Tr. 332:24-333:8. That theory was no litigation invention: At the hearing where Judge Gettleman approved the FTC Consent Order, Trudeau's counsel identified the *Natural Cures* book as acceptable under the order's misrepresentation provision:

> [Trudeau] has developed an infomercial for that Natural Cures book. This has been provided to the FTC. And they have no objection to the dissemination of the book or the infomercial in its current format.
>
> This I think falls within the book exception that we had talked about previously. So we have the first tangible example of something that is acceptable under [the infomercial] provision.

Sep. App. 35. FTC counsel did not object. And similarly, Trudeau engaged in significant correspondence with the FTC about *Natural Cures*—correspondence that culminated in the FTC "no longer object[ing] to the dissemination of the Natural Cures infomercial pursuant to the preliminary injunction." R. III 140-41. By preventing Trudeau from presenting the jury the *Natural Cures* Evidence to consider how it may have influenced Trudeau's understanding of what was permitted, the court denied Trudeau his constitutional right to show that he acted in good faith by attempting to

conform his conduct to the order. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

The exclusion of the *Natural Cures* Evidence was not harmless. As counsel argued, a pattern existed between the *Natural Cures* book and infomercial and the *Weight Loss Cure* book and infomercial. It is enough that Trudeau authored both books for the jury to infer that one affected the others. But other similarities existed: the pattern in the titles, both programs were described as "simple," and both made many of the same recommendations. R. III 82-84 (noting that the *Natural Cures* book recommends 111 products, and the *Weight Loss Cure* includes at least 26 of the same recommendations). Additionally, the FTC approved the *Natural Cures* infomercial that described some of these items as "simple," even though it required numerous cleanses. *Id.* at 84-85 n.1. The jury could have used these similarities as additional evidence to believe that Trudeau tried to model his *Weight Loss Cure* infomercial after his *Natural Cures* infomercial— thus showing he did not intend to act unlawfully.

The district court justified exclusion because it held that Trudeau's "understanding of the Consent Order is relevant only if it is ambiguous" and that Trudeau's reliance on the *Natural Cures* infomercial to prepare the *Weight Loss Cure* infomercial is "relevant only if there is evidence to suggest that defendant's use of the FTC-approved *Natural Cures* infomercial was

reasonable." App. at 22, 23. But the district court's opinion cannot be reconciled with a legion of Supreme Court case law, such as *Cheek*, where the Court said that willfulness is lacking "if the jury credits a good-faith misunderstanding and belief submission, ***whether or not the claimed belief or misunderstanding is objectively reasonable***." 498 U.S. at 202 (emphasis added). Time and again, the Supreme Court has required the Government to prove knowledge of illegality. *E.g.*, *Dixon*, 548 U.S. at 5-6; *Bryan*, 524 U.S. at 199 (holding that willfulness instruction incorrectly told the jury that the "government [was] not required to prove that he had knowledge that he was breaking the law")[9]; *Ratzlaf*, 510 U.S. at 137 (noting that willful violations require "knowledge that [the] conduct was unlawful"). Indeed, it has even done so expressly in a criminal contempt case, where it explained that a union's mistaken belief that an order had expired demonstrated a lack of willfulness because "[a] finding that the violation was willful obviously presupposes knowledge . . . that the order was still in effect." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.,* 415 U.S. 423, 430 (1974). Because excluding the

---

[9] The Court further explained that an appropriate instruction would have added at the end "that required a license" because willfulness requires that the defendant know the illegality of his acts but not necessarily the specific legal provisions prohibiting those acts. *Id.* at 199.

*Natural Cures* evidence cut Trudeau's defense off at the knees, a new trial is

appropriate.

> **B. Similarly, the court wrongly prohibited Trudeau from presenting his defense that he believed the First Amendment protected his expression of his opinions and experiences.**

The same analysis applies to Trudeau's understanding that many of

the statements in his infomercial—including some of the alleged

misrepresentations—were First Amendment protected opinions. But this too

the court shut down, professing that:

> [Trudeau's] belief as to what his First Amendment rights are is irrelevant in this case even as to forming his state of mind. He gave up those First Amendment rights when he agreed to the order limiting his speech. . . . He cannot now come and say, oh, by the way, I never believed that the law allowed that to happen.

App. at 17; *see also* Sep. App. at 69 (stating that Trudeau's "personal

understanding of what the order meant"—including whether he believed it

violated his First Amendment rights—"is not relevant in this case and

doesn't go to willfulness or good faith."). The district court erred because,

under *Cheek* and the other cases requiring knowledge of illegality to prove

willfulness, Trudeau ***could*** say that he "never believed the law allowed that

to happen." *Cheek*, 498 U.S. at 202 (explaining that Government must

"negat[e] a defendant's claim of ignorance" because a willful violator "cannot

be aware that the law imposes a duty upon him and yet be ignorant of it,

**misunderstand the law**, or believe that the duty does not exist." (emphasis added)); *see supra* at 55-56 (cases showing relevance of knowledge of illegality).

At core, the district court impermissibly substituted its own view of whether the defense was meritorious, or whether Trudeau's belief was objectively reasonable, for whether it was admissible. *Cheek*, 498 U.S. at 203 ("Knowledge and belief are characteristically questions for the factfinder, in this case the jury. Characterizing a particular belief as not objectively reasonable transforms the inquiry into a legal one and would prevent the jury from considering it."). In any event, Trudeau had a credible argument: the FTC Consent Order, which was entered into evidence in full, itself specifically reserved Trudeau's First Amendment rights. Sep. App. 15 (stating "with the exception of any waiver in connection with Parts I-X herein, nothing in the Order shall constitute a waiver of the Defendant's right to engage in speech protected by the First Amendment."). The court prohibited counsel from even *mentioning* the First Amendment, let alone pointing to the Order's "FIRST AMENDMENT" section. App. 15-16. As a result, Trudeau was unconstitutionally deprived of his right to "present a complete defense"— namely, that he believed (correctly or incorrectly) the statements of opinion in his infomercial were protected free speech. *Holmes*, 547 U.S. at 324 (noting that evidentiary rules have limits because "the Constitution guarantees

criminal defendants a meaningful opportunity to present a complete

defense.").

The erroneous exclusion was not harmless because many of the

allegedly misrepresentative statements are opinions or Trudeau's relayed

personal experience. The chart below reflects just a few examples and shows

how they are matters of opinion:

| Jury Instruction (Sep. App. 30) | Opinion or Experience |
|---|---|
| "Statements that indicate that no exercise is required by the weight loss protocol." | Some, but not others, may consider walking to the end of a long hallway and back to be "exercise." |
| "Statements that indicate that the weight loss protocol is simple." | One person's "simple" TV remote that operates a home entertainment system is a babysitter's nightmare when trying to catch the Late Show. |
| "Statements that indicate that while on the protocol, people will have no hunger." | Trudeau believed this to be a first-hand testimonial of his experience with the weight loss protocol that he thought he was permitted to share, not necessarily a statement about the book itself. |

Because the jury might have convicted based on these statements

without having the opportunity to consider that Trudeau believed these

statements were First Amendment protected, the Court must order a new

trial.

## IV.  Trudeau's Ten-Year Criminal Contempt Sentence—Among the Highest Ever for Criminal Contempt—is Excessive.

Even if Trudeau's conviction could stand (which it cannot), his ten-year sentence exceeded what is appropriate for a criminal contempt conviction. This Court bears "'special responsibility' for preventing abuse of the contempt power," and thus has "the power in appropriate circumstances to revise sentences inflicted upon contemnors whether trial has been by judge or jury." *United States v. Bukowski,* 435 F.2d 1094, 1110 (7th Cir. 1970). This is because "punishment of criminal contempt should reflect the 'least possible power adequate to the end proposed.'" *In re Troutt*, 460 F.3d 887, 893 (7th Cir. 2006) (citation omitted). Exercising that power is appropriate here.

Trudeau's sentence is grossly "disproportionate to the crime committed" and worthy of this Court's revision. *See Solem v. Helm,* 463 U.S. 277, 284, 291 (1983) (noting that under the Eighth Amendment, comparison to penalties awarded for same or more serious crimes in same and other jurisdictions may show excessiveness); *see also Caldwell v. United States*, 595 A.2d 961, 968 (D.C. 1991) (collecting federal appellate cases reducing contempt sentences because of disproportionality of sentence). Compared to other convicted contemnors in this Circuit, Trudeau is facing the harshest sentence ever handed down, except that of one contemnor whose crime warranted a

terrorism sentence enhancement. *See Ashqar,* 582 F.3d at 822; *Misenheimer*, 677 F. Supp. at 1392 (ten-year sentence as lengthiest contempt sentence).

Applying this Court's traditional factors for revising contempt sentences, Trudeau's sentence is excessive. "Pertinent to this inquiry are[] the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future." *Bukowski,* 435 F.2d at 1110 (quotations omitted). None of these support the current sentence.

To the extent the Court finds that the Government presented any evidence of willfulness, it was hardly overwhelming. *See supra* at Part II.C. And even accepting the Government's argument *in toto*, each customer theoretically lost at most $29.95 plus shipping and handling.[10] R.III 293-94. No consumer class action was ever brought and no fraud charges were levied. Based on what has already transpired, further prison time is unnecessary, as

---

[10] Even this loss estimate gives the Government too much credit, because recipients of the *Weight Loss Cure* book also received a *Natural Cures* book, and sometimes were charged less than $29.99. R.III 293. Moreover, the Government presented no evidence whatsoever that any customers that desired a refund (very few did) did not receive their money back. The book was sold with a money-back guaranteed refund. 11/8/13 Tr. 485:23-486:3.

it is self-evident that Trudeau would never again air the *Weight Loss Cure* infomercial for fear of additional prosecution. Accordingly, this Court should reduce Trudeau's sentence to time served.

## CONCLUSION

For the foregoing reasons, this Court should (1) find the Speedy Trial Act violated and direct dismissal with prejudice, (2) grant a judgment of acquittal because the Government produced insufficient evidence of willfulness, or in the alternative, (3) reverse and remand for a new trial because the district court denied Trudeau his constitutional right to present his defense and improperly instructed the jury on willfulness. Finally, if the Court affirms the conviction, it should reduce Trudeau's sentence.

Respectfully submitted,

*/s/ Christopher M. Bruno*

KIMBALL R. ANDERSON              CHRISTOPHER M. BRUNO*
THOMAS L. KIRSCH, II              JEFF P. JOHNSON
*Winston & Strawn LLP*            *Winston & Strawn LLP*
*35 West Wacker Drive*            *1700 K Street N.W.*
*Chicago, IL 60601*              *Washington, DC 20006*
*(312) 558-5600*                *(202) 282-5000*

                                *\*Counsel of Record*

*Counsel for Defendant-Appellant Kevin Trudeau*
AUGUST 22, 2014

62

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. 32(A)(7)

Pursuant to Fed. R. App. P. 32(a)(7)(C), I, Christopher M. Bruno, an attorney, certify that I have complied with the above-referenced rule, and that according to the word processor used to prepare this brief, Microsoft Word, this brief contains 13,400 words and therefore complies with the type-volume limitation of Rule 32(a)(7)(B) and (C).

Dated:  August 22, 2014

_/s/ Christopher M. Bruno_____
Christopher M. Bruno

# ADDENDUM – APPLICABLE LAW

## Contempt of Court, 18 U.S.C. § 401

## § 401. Power of court

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as--

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

## Speedy Trial Act. 18 U.S.C. § 3161, et seq.

## § 3161. Time limits and exclusions

(c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

(2) Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se.

(d)(1) If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or

indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

(2) If the defendant is to be tried upon an indictment or information dismissed by a trial court and reinstated following an appeal, the trial shall commence within seventy days from the date the action occasioning the trial becomes final, except that the court retrying the case may extend the period for trial not to exceed one hundred and eighty days from the date the action occasioning the trial becomes final if the unavailability of witnesses or other factors resulting from the passage of time shall make trial within seventy days impractical. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section. The sanctions of section 3162 apply to this subsection.

* * * *

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

* * * *

(5) If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

## § 3162. Sanctions

(a)(1) If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual

contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

(2) If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

## § 3172. Definitions

As used in this chapter--

(1) the terms "judge" or "judicial officer" mean, unless otherwise indicated, any United States magistrate judge, Federal district judge, and

(2) the term "offense" means any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a Class B or C misdemeanor or an infraction, or an offense triable by court-martial, military commission, provost court, or other military tribunal).

**18 U.S.C. § 3559**

## § 3559. Sentencing classification of offenses

(a) Classification.--An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is—

> (1) life imprisonment, or if the maximum penalty is death, as a Class A felony;

> (2) twenty-five years or more, as a Class B felony;

> (3) less than twenty-five years but ten or more years, as a Class C felony;

> (4) less than ten years but five or more years, as a Class D felony;

> (5) less than five years but more than one year, as a Class E felony;

> (6) one year or less but more than six months, as a Class A misdemeanor;

> (7) six months or less but more than thirty days, as a Class B misdemeanor;

> (8) thirty days or less but more than five days, as a Class C misdemeanor; or

> (9) five days or less, or if no imprisonment is authorized, as an infraction.

(b) Effect of classification.--Except as provided in subsection (c), an offense classified under subsection (a) carries all the incidents assigned to the applicable letter designation, except that the maximum term of imprisonment is the term authorized by the law describing the offense.

## CERTIFICATE OF SERVICE

I, Christopher M. Bruno, an attorney, certify that on this day I caused

the foregoing Opening Brief and Short Appendix for Defendant-Appellant

Kevin Trudeau, to be served via ECF and e-mail on the following:

Marc Krickbaum
Assistant United States Attorney
110 E. Court Avenue, Suite 286
Des Moines, IA 50309
(515) 473-9305

Dated:  August 22, 2014

/s/ Christopher M. Bruno
Christopher M. Bruno

No. 14-1869

# In the United States Court of Appeals
# for the Seventh Circuit

―――――――

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

*v.*

KEVIN TRUDEAU,
DEFENDANT-APPELLANT

―――――――

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, NO. 10-CR-886-1
HON. RONALD A. GUZMAN, PRESIDING*

―――――――

**REQUIRED SHORT APPENDIX FOR
DEFENDANT-APPELLANT KEVIN TRUDEAU**

―――――――

KIMBALL R. ANDERSON
THOMAS L. KIRSCH, II
*Winston & Strawn LLP*
*35 West Wacker Drive*
*Chicago, IL 60601*
*(312) 558-5600*

CHRISTOPHER M. BRUNO\*
JEFF P. JOHNSON
*Winston & Strawn LLP*
*1700 K Street NW*
*Washington, DC 20006*
*(202) 282-5000*

*\*Counsel of Record*

*Counsel for Defendant-Appellant Kevin Trudeau*

***Oral Argument Requested***

## CERTIFICATE OF COMPLIANCE
## WITH CIR. R. APP. P. 30(d)

Pursuant to Cir. R. App. P. 30(d), I, Christopher M. Bruno, an attorney,

certify that I have complied with the above-referenced rule, and that all

materials required by Circuit Rule 30(a) are included in the appendices.

Dated:  August 22, 2014

    _/s/ Christopher M. Bruno_
    Christopher M. Bruno

# TABLE OF CONTENTS

Excerpted Transcript of Proceedings Discussing Motion to
    Dismiss Pursuant to Speedy Trial Act,
    December 7, 2011 ................................................................................ 1

Excerpted Transcript of Proceedings Granting Government's Motion
    *in Limine* to Exclude the First Amendment,
    October 29, 2013................................................................................ 11

Order regarding Defendant's request to introduce "Natural Cures"
    Evidence, November 5, 2013............................................................. 21

Excerpted Transcript of Trial Proceedings, Charge to the Jury,
    November 12, 2013............................................................................. 24

Jury Instructions, November 12, 2013 ..................................................... 28

Order as to Jury Verdict, November 12, 2013.......................................... 34

Memorandum Opinion and Order Regarding Motion for Acquittal,
    January 29, 2014................................................................................ 35

Excerpted Transcript of Sentencing Proceedings, March 17, 2014 ......................... 40

Judgment (Sentencing Order), April 3, 2014............................................. 51

# TRANSCRIPTS OF PROCEEDINGS INDEX

Transcript of Pre-Trial Proceedings
     December 7, 2011

Status Hearing ................................................................................................ 1

Transcript of Pre-Trial Proceedings
     October 29, 2013

Final Pre-Trial Conference ......................................................................... 11

Transcript of Trial Proceedings
     November 12, 2013

Jury Charge ................................................................................................... 24

Transcript of Sentencing Proceedings
     March 17, 2014

Jury Charge ................................................................................................... 40

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        )
                                      )
 4              Plaintiff,            )
                                      )
 5     v.                             )  No. 10 CR 886
                                      )
 6   KEVIN TRUDEAU,                   )  Chicago, Illinois
                                      )  December 7, 2011
 7              Defendant.            )  10:30 a.m.

 8                  TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE RONALD A. GUZMAN
 9

10   APPEARANCES:

11   For the Plaintiff:        HON. PATRICK J. FITZGERALD
                               United States Attorney
12                             BY:  MR. MARC KRICKBAUM
                               Assistant United States Attorney
13                             219 South Dearborn Street
                               Suite 500
14                             Chicago, Illinois  60604
                               (312) 353-5300
15
     For the Defendant:        WINSTON & STRAWN LLP
16                             BY:  MR. THOMAS LEE KIRSCH II
                               35 West Wacker Drive
17                             Chicago, Illinois  60601
                               (312) 558-3220
18
                               LAW OFFICE OF DANIEL J. HURTADO
19                             BY:  MR. DANIEL J. HURTADO
                               841 North Grove Avenue
20                             Oak Park, Illinois  60302
                               (708) 289-2503
21

22   Court Reporter:          NANCY C. LaBELLA, CSR, RMR, CRR
                               Official Court Reporter
23                             219 South Dearborn Street
                               Room 1222
24                             Chicago, Illinois  60604
                               (312) 435-6890
25                             Nancy_LaBella@ilnd.uscourts.gov
```

1    interpreting it the way the government wants to do it is

2    demonstrated by what the government is trying to do in this

3    case, which is to then amend it later on so it does apply.

4         THE COURT:  But that's not different.  I can't recall

5    the last time I had a major offense here where there wasn't a

6    superseding indictment before the case was brought to trial.

7    The government always has the option, if it causes no

8    prejudice to anyone, to bring a superseding indictment,

9    redefining the charges against a defendant.  Why is this any

10   different?

11        MR. KIRSCH:  Well, your Honor, this is much -- I

12   mean, this -- usually in a -- when a superseding indictment is

13   brought, there's additional evidence; additional theories of

14   guilt have been discovered and investigated and uncovered;

15   there have been additional cooperating informants.  I have

16   never ever, ever heard of the U.S. attorney's office anywhere

17   bringing a superseding indictment and lodging more charges

18   against a criminal defendant simply because the judge changed.

19   And that's -- your Honor, that's all we have.

20        THE COURT:  Who has told you that the reason that

21   they have changed this charge is because I'm the judge now as

22   opposed to Judge Gettleman?

23        MR. KIRSCH:  Well, I think that's obvious from their

24   brief.  I think it's -- they -- there's nowhere in their

25   brief -- there's nowhere -- there's not one single changed

**2**

 1   circumstance.  And they concede that in their brief.  Their

 2   whole argument in their brief is, well, we didn't agree with

 3   Judge Gettleman; we just chose not to contest Judge Gettleman.

 4   Your Honor, there's just -- they -- they chose not to contest

 5   Judge Gettleman after much deliberation.  It just doesn't hold

 6   any weight.

 7        THE COURT:  My experience with government

 8   prosecutions has been that the government reanalyzes and

 9   reevaluates the evidence sometimes almost on a daily basis.

10   And if a reevaluation of the evidence, given all sorts of

11   considerations, the state of health of a witness, the

12   prevailing sentiments and feelings in the jurisdiction in

13   which the case will be tried, all of these things they take

14   into account and they determine is this case worthy of this

15   type of prosecution.  And I see no indication anywhere in the

16   record that that's not what happened in this case.  They have

17   reevaluated, and they may before the case is over reevaluate

18   again.

19        But that, by the way, is why you have the Speedy

20   Trial Act.  In cases of indictments, informations involving an

21   offense which can lead to imprisonment for more than six

22   months, you as the defendant can put a cap on that

23   reevaluation any time you want to.  You can say, I'm ready for

24   trial and I don't agree to a tolling of the Speedy Trial Act;

25   and you get your trial very quickly.

 1          MR. KIRSCH:  Well, your Honor, I just -- briefly.  In

 2   their response brief, they do not indicate any of those

 3   factors that the Court cited.  They argue that the nature of

 4   the offense and Trudeau's background justify eliminating any

 5   cap on the potential sentence, things that were well known to

 6   them when they agreed with Judge Gettleman.

 7          Now, your Honor, with respect to Trudeau's

 8   background, they rely on offenses that were committed 20 years

 9   ago when Trudeau was a young man.  For them to say, well, we

10   just discovered a 20-year-old offense and that changes

11   everything -- that changes everything here -- your Honor, I

12   just don't think that's grounds for them to be able to come in

13   here --

14          THE COURT:  Well, I think if they had just discovered

15   it, it might be grounds.  I'm just not likely to believe them

16   if they tell me that they just discovered it.  But there's a

17   difference there.  But reanalysis and reevaluation does not

18   mean or rely necessarily on discovering new evidence or

19   discovering new facts.  It just simply means that a

20   reassessment has taken place.  It could be a different

21   prosecutor.  It could be any number of things that cause a

22   reassessment of the evidence.

23          I don't sense that you're alleging that there's some

24   illegal or evil or improper motive for the government's

25   reevaluation.  That would be a different matter.

 1          MR. KIRSCH:  Your Honor, I'm not, although I've --

 2    although respectfully, there's nothing -- there's nothing in

 3    their response brief to indicate that they reevaluated any

 4    evidence in this case at all.  In fact, they don't -- they

 5    don't make that argument to the Court.  They never say we

 6    reevaluated the evidence and based upon our reevaluation of

 7    the evidence, we're now in front of this Court, just like we

 8    would have been in front of Judge Gettleman, asking for an

 9    enhanced penalty.  They don't make that argument, your Honor.

10          THE COURT:  I think we've gone around the bush on

11    this one quite a bit.

12          Ultimately, after all is said and done, in a contempt

13    citation, it's really the Court's discretion to choose the

14    punishment.  It's not the government's.  I think that they

15    have a right to reevaluate and reposition themselves before

16    the Court, but it's ultimately the Court's discretion.

17          And I think, having evaluated all of the proceedings

18    in this case, that the type of conduct alleged here, the

19    gravity of the offense, the importance of any ruling or

20    judgment that comes out of these proceedings in terms of the

21    public good, deterrence and otherwise, lead me to conclude

22    that this is a proper case for the type of punishment that the

23    government seeks in its request to amend the show cause order.

24    And I'm going to grant that motion and allow them to amend.

25          As far as the Speedy Trial Act is concerned, I think

1    I've pretty much articulated my reasoning.  If we read the Act

2    on its face, it applies to a defendant charged with an offense

3    in an information or an indictment.  This defendant is not

4    charged either in an information or an indictment.

5         So that to apply the Act at all, we have to, as I

6    think the Judicial Conference guidelines -- which, by the way,

7    are close to 40 years old at this point -- we do essentially

8    what the guidelines have done; and, that is, we analogize; we

9    say this isn't an indictment; this isn't an information, but

10   it serves the same purpose.  And the purposes of the Act were

11   to put certain limits on the government's time to bring an

12   offense to trial.  And, therefore, this Act ought to apply to

13   a contempt proceeding.  If we do that then, we end up applying

14   the Act to this proceeding.  And we do so because we have, by

15   analogy, taken the court's order to show cause as the charging

16   document in this case.  The charging document defines, among

17   other things, the punishment that's allowed in the case.  And

18   the charging document in this case defined the punishment as

19   not exceeding six months.  That's clear language in Judge

20   Gettleman's order.

21        Therefore, as the Act applies -- or if we apply the

22   Act to this contempt proceeding, we have to determine that it

23   just simply doesn't apply to this particular contempt

24   proceeding because this is not an offense within the

25   definition of the Act itself.  It wouldn't apply if the

**6**

```
 1    proceeding had been brought by an indictment or an

 2    information, and it ought also not to apply if the proceedings

 3    are brought by way of a citation.  It's just that simple.

 4            There are cases that you can read both ways.  I,

 5    frankly, don't find the Richmond case to state what

 6    Mr. Trudeau seems to be arguing that it states.  Not to

 7    mention the fact that it's an unpublished case and, therefore,

 8    has no precedential value.

 9            And the guidelines themselves, even if we agree with

10    their conclusion that the Act should apply to contempt

11    proceedings, the guidelines nowhere imply that the Act should

12    apply to contempt proceedings in a way any differently than it

13    applies to proceedings that are brought under indictment or

14    information.  And that, it seems to me, is what the defendant

15    is seeking in this case.  The Act simply doesn't apply to any

16    criminal proceeding for which the maximum penalty is no more

17    than six months.

18            We haven't touched on the double jeopardy argument,

19    but, quite frankly, I think the Seventh Circuit's most recent

20    opinion really determines that.  Whether a contempt is civil

21    or criminal depends on essentially the sanction that's

22    involved, the nature of that sanction.  And the Seventh

23    Circuit held in this very matter that the sanctions ordered by

24    Judge Gettleman are clearly remedial in nature and therefore

25    civil.  The double jeopardy clause simply does not apply.  It
```

1  does not bar a criminal prosecution and a civil sanction based

2  upon overlapping conduct.  So the double jeopardy objection

3  and bar is denied.

4       And as I previously indicated, I determined that the

5  government's request to amend the complaint is appropriate and

6  proper in this case.  This is a serious issue involving

7  conduct which, if it is proven, impacts a great number of

8  people.  And the need for deterrence of criminal conduct of

9  this nature -- and I do not prejudge the issues as to this

10 defendant -- but criminal conduct of this nature is great, and

11 I don't believe that treating such conduct as a Class B or C

12 misdemeanor is the most appropriate manner to proceed.  I

13 think the government is perfectly within its rights to seek an

14 upgrade of the charges in this case to felony level.

15      Having said that, it appears to me that given the

16 uncertainty of the law in the area, the most prudent way to

17 proceed would be to proceed from here on out, once the

18 amendment is allowed and officially filed, as if the Speedy

19 Trial Act does apply from there on in.

20      Now we need some dates.  When can the government

21 comply with its Rule 16 disclosures?

22      MR. KRICKBAUM:  Judge, we would ask for a date in 30

23 days, which the purpose of that, Judge, is so that I can

24 travel to Washington to review documents that are in the FTC's

25 possession but not in my possession and determine whether any

**8**

1     additional Rule 16 disclosures are appropriate or other

2     discovery disclosures, including Brady, are appropriate.

3              THE COURT:  Carole.

4              THE CLERK:  January 6th.

5              MR. KRICKBAUM:  And, Judge, we submitted as part of

6     our motion to amend a proposed amended rule to show cause,

7     which I'm happy to submit electronically as a proposed order

8     to the Court.  My understanding of the Court's ruling and what

9     we asked the Court to do is to dismiss the original order to

10    show cause without prejudice and to enter the amended order to

11    show cause which we submitted to your Honor.  That's my

12    understanding of the motion that the Court has granted.

13             THE COURT:  Yes.  But I think until the proposed

14    amended rule standing by itself is actually entered, it's not

15    the charging document.  So you can submit it to us in hard

16    copy or electronically.  Electronically is --

17             MR. KRICKBAUM:  We will do both.

18             THE COURT:  -- better.

19             MR. KRICKBAUM:  We will do both, Judge.

20             THE COURT:  Okay.  And we will issue a ruling

21    entering it as the rule and charging document in this case.

22    And from that point forward, the defendant will be -- and at

23    that point we will at the same time dismiss without prejudice

24    the previously filed order by Judge Gettleman.

25             MR. KRICKBAUM:  And I would ask that from this date

 1    until January 6th, that time be excluded in the interest of

 2    justice.

 3            THE COURT:  Response?

 4            MR. KIRSCH:  Your Honor, can I just have one minute?

 5            THE COURT:  Sure.

 6      (Brief pause.)

 7            MR. KIRSCH:  Your Honor, that's fine.

 8            THE COURT:  Okay.  Time is excluded.

 9            Assuming the government's compliance with Rule 16 by

10    January 6th, then how much time do the parties want for the

11    filing of their pretrial motions?

12            MR. KRICKBAUM:  And, Judge, here we're talking about

13    standard pretrial motions, not motions in limine, is that --

14    that's my understanding.  Is that true?

15            THE COURT:  That's correct.  I won't ask for the

16    motions in limine until after we set a trial date.

17            MR. KIRSCH:  90 days, your Honor.  The parties agree

18    on 90 days if that's okay with the Court.

19            THE COURT:  90 days after January 6th, Carole.

20    Actually, if we're going to take 90 days, I think we can file

21    the motions in limine as well.  By that time you folks will

22    have had ample opportunity to review all the evidence and

23    begin to shape your case up and I don't see why we can't

24    include all of the motions in limine as well, any evidentiary

25    issues that you wish to raise, any other motions in limine.

```
 1                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3    UNITED STATES OF AMERICA,          )
                                         )
 4                  Plaintiff,           )
                                         )
 5       v.                              )  No. 10 CR 886
                                         )
 6    KEVIN TRUDEAU,                     )  Chicago, Illinois
                                         )  October 29, 2013
 7                  Defendant.           )  10:30 a.m.

 8         TRANSCRIPT OF PROCEEDINGS - FINAL PRETRIAL CONFERENCE
                 BEFORE THE HONORABLE RONALD A. GUZMAN
 9

10    APPEARANCES:

11    For the Plaintiff:          HON. ZACHARY T. FARDON
                                  United States Attorney
12                                BY:  MR. MARC KRICKBAUM
                                       MS. APRIL M. PERRY
13                                Assistant United States Attorneys
                                  219 South Dearborn Street
14                                Suite 500
                                  Chicago, Illinois  60604
15                                (312) 353-5300

16    For the Defendant:          WINSTON & STRAWN LLP
                                  BY:  MR. THOMAS LEE KIRSCH II
17                                35 West Wacker Drive
                                  Chicago, Illinois  60601
18                                (312) 558-5600

19                                MS. CAROLYN PELLING GURLAND
                                  Attorney at Law
20                                2 North LaSalle Street
                                  17th Floor
21                                Chicago, Illinois  60602
                                  (312) 420-9263

22

23

24

25
```

Nancy C. LaBella, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1222
Chicago, Illinois  60604
(312) 435-6890
Nancy LaBella@ilnd.uscourts.gov

11

1    mean, it's the issue.  It's what he said as compared to what's

2    in the book.

3           Second, anything in the book is not being attacked on

4    the basis of it being impermissible to print the book.  And

5    there's no issue that's going to be raised to the jury about

6    that.  What's being attacked here by the government is your

7    client's statements in the infomercials after the book was

8    published.

9           So why would the fact that the book constitutes First

10   Amendment free speech when it was published be relevant to the

11   jury?

12          MR. KIRSCH:  Well, your Honor, first of all, that is

13   what I intend to tell the jury, what the Court just said.

14          Now, why the First Amendment is relevant, first of

15   all, there is absolutely no prejudice whatsoever to the

16   government to me explaining to the jury why what's written in

17   the book is protected.

18          THE COURT:  Well, there's a great deal of possible

19   prejudice, which is, that the jury will become confused and

20   believe that the order of contempt violated your client's

21   First Amendment rights.

22          MR. KIRSCH:  That is not our argument.  That's not

23   the argument that we'll be making.  Your Honor, if a person

24   writes a book that says the moon is made of cheese --

25   obviously it isn't -- but somebody could write that in their

**12**

 1    book and it's First Amendment protected.  Now, if the jury was

 2    to dispute -- or the jury was led to believe that the

 3    statements in the book were somehow incorrect or improper, the

 4    jury needs to be told -- I think either from the Court or I

 5    can do it in opening statement; it doesn't matter -- that the

 6    statements in the book are not at issue here.  What's in the

 7    book is not at issue, and it's -- what's in the book is

 8    protected First Amendment speech.

 9          I don't -- I just -- there's absolutely no prejudice

10    to the jury whatsoever to explaining to the jury -- and would

11    the government -- I don't know why the government would want

12    to keep the jury in the dark on this point.  I mean, what --

13    to tell the jury why what's written in the book is protected

14    is perfectly permissible and is appropriate.  And I suggest

15    that the Court should do it in instructions because the jury

16    should not be left to speculate as to whether what was written

17    in the book is protected and if what's written in the book --

18    or why what's written in the book is protected.  There's just

19    no good reason for that.

20          The government's argument is one that we agree with.

21    The government says the defense can't argue that the

22    infomercials constituted First Amendment protected speech or

23    that the order violated the First Amendment.

24          But then they take that argument and they say, oh,

25    and, by the way, the government -- or the defense shouldn't be

**13**

 1   able to mention the First Amendment at all during the trial.

 2   And, your Honor, that's just taking it too far.  They're

 3   putting an issue that's not in dispute and they're taking it

 4   too far.

 5          And the other thing is, if Trudeau was going to

 6   testify, his understanding of his First Amendment rights would

 7   clearly be relevant to the issue of willfulness.  But I

 8   think -- so there's -- it's twofold.  I think it's very simple

 9   just to explain to the jury that what's written in the book is

10   protected by the First Amendment right of free speech.  Then

11   if Trudeau testifies, he should be able to explain his

12   understanding of the First Amendment, just as he would the

13   mirror image doctrine and explain to the jury why that is

14   relevant to the issue of willfulness, which it clearly is.

15          THE COURT:  Government?

16          MS. PERRY:  Judge, we absolutely disagree.  This is

17   laid out in great detail in our briefs on this matter.

18          The First Amendment is totally irrelevant.  As we

19   said earlier, we would not have an objection to the judge

20   instructing the jury at the end of the trial that the truth or

21   falsity of claims made in the book is not for their

22   consideration.

23          But to bring the First Amendment into this, first of

24   all, in lawyer's statements is completely inappropriate.  It's

25   irrelevant.  Whether or not the book is protected speech is

1  simply irrelevant.  Whether or not the book is protected by

2  the First Amendment -- and if Mr. Kirsch wants to talk about

3  it in his opening, a natural question for the jury would be,

4  well, why aren't the infomercials protected by the First

5  Amendment; why isn't the misrepresentation protected by the

6  First Amendment.  It gets us down into a line of First

7  Amendment juris prudence that is simply not needed here.  We

8  don't need to get into the fact that the infomercials are

9  commercial speech and therefore not protected; that

10 misrepresentations in commercial speech are not protected.

11 They don't need to consider the First Amendment at all, and

12 they won't if they're told that the truth and falsity of the

13 book is not for their decision.

14        Secondly, with respect to Mr. Trudeau's testimony,

15 what his testimony has always consistently been is that his

16 belief and understanding of the First Amendment led him to

17 believe that this was protected speech.  All of his quotes on

18 this are laid out in the government's filing on this matter.

19 And along with that are all of the cases that say that the

20 defendant's understanding of the First Amendment, the fact

21 that he believed his speech was protected, simply doesn't

22 matter.

23        The civil rights protestors in Walker v. City of

24 Birmingham certainly believed that their speech was protected

25 by the First Amendment.  They were right.  Their speech would

**15**

1   have been protected by the First Amendment.  But ultimately

2   the Supreme Court ruled that that had no bearing on their

3   contempt case.  It's simply inadmissible, and the Supreme

4   Court has held that at least three times.

5           MR. KIRSCH:  Your Honor, the Birmingham case is

6   totally in opposite.

7           THE COURT:  I don't think we have to go there.

8           MR. KIRSCH:  Okay.

9           THE COURT:  First of all, if you're going to bring up

10  the First Amendment, then the Court would have to give the

11  jury an instruction on the First Amendment.  It's not for you

12  to tell the jury what your client's First Amendment rights

13  are.  It's not for the government.  It's for the Court to do.

14  It's law.

15          I'm wondering just what kind of an instruction I

16  would give, seeing as how there's no First Amendment issue in

17  this case.  Do I tell them what your client's rights are with

18  respect to political speech?  Commercial speech?  Mixed?

19  Publications?  Oral speech?  Do I tell them about clear and

20  present danger?  Do I tell them about the limitations on First

21  Amendment rights in fraudulent commercial speech?  Do I give

22  them all of those instructions?  Because all of those issues,

23  if we're going to discuss First Amendment, are issues that

24  would be touched upon in this case.

25          The answer to that question is no, I give them no

**16**

1   such instruction about any of those things because the First

2   Amendment is not implicated in this case.

3           I am happy to tell the jury that your client's right

4   to publish the book is not in question in this case.  It's not

5   an issue.  And that he had the perfect right to publish the

6   book -- period -- not mentioning the First Amendment in any

7   way because to do so would merely confuse them without an all-

8   encompassing instruction on what the First Amendment rights

9   are.

10          Second, your client's belief as to what his First

11  Amendment rights are is irrelevant in this case even as to

12  forming his state of mind.  He gave up those First Amendment

13  rights when he agreed to the order limiting his speech.  He

14  agreed to that order.  That was a consent order.  He said, I

15  agree I will not in an infomercial deny the truth of the book

16  or in an infomercial misrepresent the book.  He cannot now

17  come and say, oh, by the way, I never believed that the law

18  allowed that to happen.

19          And, third, to allow him to argue that in his mind he

20  believed he could violate the court's order is in essence an

21  attack on the validity of the court's order; and doing that at

22  the same time raising the First Amendment issue would clearly

23  cause great confusion to the jury and divert this entire trial

24  into a tailspin that would most likely result in a totally

25  unreasonable result.

```
 1            For all of those reasons, the First Amendment is not

 2    an issue in this case.  It won't be an issue.

 3            MR. KIRSCH:  Your Honor, I accept the Court's ruling.

 4    But so the record is clear, those are not my arguments.  And I

 5    guess -- I guess -- those are just not my arguments.  The

 6    government set up straw man arguments that are not my

 7    arguments.

 8            I think that the government has suggested that --

 9    and, by the way, your Honor, the government says in jury

10    instructions, after the end of the trial, the Court will

11    instruct the jury.  That's true.  But, your Honor, in my

12    opening statement and in my closing argument, I'm going to

13    talk about what the government has to prove.  And in my

14    opening statement and in my closing argument, I do intend to

15    tell the jury that the truth or falsity of the book is not at

16    issue.

17            THE COURT:  And I'll tell them too.

18            MR. KIRSCH:  All right.

19            THE COURT:  I said that.

20            MR. KIRSCH:  And I think I -- my objection is we

21    should tell them why and we should tell them it is protected

22    free speech.

23            THE COURT:  No.

24            MR. KIRSCH:  And I think not telling them why -- I

25    think we should tell them why, your Honor.  That's my
```

**18**

 1    objection.

 2            THE COURT:  It's not necessary.  First of all, all

 3    the jurors before they're allowed to take part in this case

 4    will agree to follow the Court's instructions on the law.  And

 5    I'm going to instruct them that your client's right to publish

 6    the book is not an issue in this case.  It's not in question;

 7    that no one is alleging that he did anything wrong in

 8    publishing the book.

 9            MR. KIRSCH:  Yes, your Honor.

10            THE COURT:  Okay.  Anything else, his testimony that

11    he believes his First Amendment right allowed him to say the

12    things that he said would, in essence, be an argument that he

13    believed that even if the jury finds that what he said

14    misrepresented what was in the book that he's not guilty

15    because he didn't have a sufficient willfulness or state of

16    mind.  And that's not true.  It's not the law.  And it's not

17    the law for the reasons I stated.

18            First, his belief as to what his legal rights are

19    does not trump Judge Gettleman's order.  Judge Gettleman's

20    order is not at issue here.  If he broke the order, he broke

21    the order; he's guilty.  Whether the order itself violated his

22    First Amendment rights or whether he believed it violated his

23    First Amendment rights is irrelevant.

24            Second, he specifically agreed to the court's order

25    limiting his speech in infomercials to speech that does not

 1    misrepresent the content of the book.  He cannot now be

 2    arguing that in order to be found guilty of having violated

 3    that order, we must consider whether or not he believed that

 4    the Constitution gave him the right to violate that order.

 5    It's not relevant.  He agreed not to.  He cannot now say that

 6    agreement fails because the Constitution gives me the right to

 7    do so.

 8            That's my ruling.

 9            FTC's actions or inactions.  Will there be evidence

10    as to that?

11            MS. PERRY:  Not from the government.

12            THE COURT:  Well, I think it's the government's

13    motion to exclude, so I assume that the evidence would have

14    come from the defense.

15            MR. KIRSCH:  Your Honor, if the Court is referring to

16    Document No. 85, which is the government's motion in limine to

17    bar evidence or argument that the FTC failed to inform the

18    defendant that he was in contempt of court, then we agree.

19            THE COURT:  Okay.  So there will not be any evidence

20    that the FTC failed to cite him for contempt of court or warn

21    him or in any way sanction him before it did?

22            MR. KIRSCH:  Correct.  If for some reason -- your

23    Honor, if for some reason that becomes relevant during the

24    trial, I'll certainly raise it with the Court outside the

25    presence of the jury.  But I don't anticipate that it will be.

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 CR 886 |
| | ) | |
| vs. | ) | Judge Ronald A. Guzmán |
| | ) | |
| KEVIN TRUDEAU, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>ORDER</u>

Defendant seeks to introduce into evidence his book *Natural Cures "They" Don't Want You to Know About*, a July 19, 2004 infomercial for that book and correspondence from the FTC that said it did not object to defendant's dissemination of that version of the *Natural Cures* infomercial (collectively, "the *Natural Cures* evidence") to: (1) rebut the testimony of government witness, Melissa Joy Dobbins; and (2) show that defendant did not willfully violate the Consent Order.

Ms. Dobbins, a dietician, is expected to provide expert testimony about: (1) what 100 grams of protein looks like; (2) how the 500-calorie-per-day requirement of the protocol compares to an average adult's daily caloric intake; (3) whether the protocol constitutes a diet; (4) whether the protocol involves portion control or calorie counting; (5) whether the protocol consists only of a magic substance and a "few other little things"; and (6) what foods contain the substances that the protocol says cannot be consumed, like sucrose and nitrites. She will also provide fact testimony about her purchase of various products that the protocol says must or should be consumed. Defendant says "evidence . . . that the FTC explicitly approved Trudeau's description of these exact same items as 'inexpensive' and 'simple' in the *Natural Cures* infomercial" will rebut Ms. Dobbins' fact testimony. (*See* Def.'s Reply Nat. Cures at 2.)

The Court disagrees.  Ms. Dobbins is going to testify about facts:  what she purchased, where she made the purchases and how much she paid.  She is not going to characterize the price of any item as high, low or anything else or opine about the ease or difficulty of obtaining one or more of the items.  Thus, evidence that the FTC "explicitly approved" the description of these items as 'inexpensive' and 'simple' in the *Natural Cures* infomercial, if such evidence exists, will not rebut the testimony Ms. Dobbins is expected to give.

Alternatively, defendant argues that the *Natural Cures* evidence is relevant to his state of mind because it shows that he interpreted the provisions of the Consent Order as immunizing any infomercial patterned on the FTC-approved *Natural Cures* infomercial.  However, defendant's understanding of the Consent Order is relevant only if it is ambiguous, which it is not.  (*See* 9/2/04 Consent Order at 8-9 (permitting defendant to make infomercials for his books if the infomercials "[do] not misrepresent the content of the book")); *see also FTC v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009) (stating that contempt will lie only if the underlying order "sets forth an unambiguous command" and "the heart of [the civil contempt] case is the court's command in its 2004 Consent Order that 'the infomercial for any such book . . . must not misrepresent the content of the book'"); *United States v. Huebner*, 752 F.2d 1235, 1244 (7th Cir. 1985) (stating that, absent ambiguity, "[t]he scope of a consent decree must be interpreted within its four corners and not with reference to the specific 'purposes' of the parties involved").

Finally, defendant argues that the *Natural Cures* evidence is relevant to his state of mind with respect to the *Weight Loss Cure* infomercials because he used the former infomercial as a template for the latter.  Given the dearth of circumstantial evidence supporting that proposition, the Court assumes that defendant plans to testify to that effect.  However, that template testimony is

2

relevant only if there is evidence to suggest that defendant's use of the FTC-approved *Natural Cures* infomercial was reasonable, *i.e.*, that the FTC's approval of the *Natural Cures* infomercial constituted a finding that it did not misrepresent the content of the *Natural Cures* book and that the content of both is so similar to that of the *Weight Loss Cure* book and infomercials that approval of one logically includes the other.  It is not clear that such evidence exists.  (*See, e.g.*, Email from Kaufman to Bradford (July 23, 2004) ("This [approval] only refers to the version of the infomercial – a transcription of which was sent to me via fax on July 19, 2004."); 9/2/04 Hr'g Tr. at 10 (defense counsel saying that the FTC had no objection to dissemination of *The Natural Cures* book and infomercial in "[their] current format" and that, "[t]his . . . falls within the book exception that we had talked about previously").)  However, if it does, and defendant offers template testimony, the *Natural Cures* evidence may be relevant to willfulness.[1]

**SO ORDERED.**                    **ENTERED:  November 5, 2013**


*Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States District Judge**

---

[1]Even if the *Natural Cures* evidence has some relevance to defendant's state of mind, it would still have to meet the requirements of Rule 403 to be admissible.  *See* Fed. R. Evid. 403 (allowing courts to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

3

```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3    UNITED STATES OF AMERICA,        )
                                       )
 4                 Plaintiff,          )
                                       )
 5      v.                             )  No. 10 CR 886
                                       )
 6    KEVIN TRUDEAU,                   )  Chicago, Illinois
                                       )  November 12, 2013
 7                 Defendant.          )  1:00 p.m.

 8                    TRANSCRIPT OF TRIAL PROCEEDINGS
              BEFORE THE HONORABLE RONALD A. GUZMAN, AND A JURY
 9

10    APPEARANCES:

11    For the Plaintiff:        HON. ZACHARY T. FARDON
                                United States Attorney
12                              BY:  MR. MARC KRICKBAUM
                                     MS. APRIL M. PERRY
13                              Assistant United States Attorneys
                                219 South Dearborn Street
14                              Suite 500
                                Chicago, Illinois  60604
15                              (312) 353-5300

16    For the Defendant:        WINSTON & STRAWN LLP
                                BY:  MR. THOMAS LEE KIRSCH II
17                              35 West Wacker Drive
                                Chicago, Illinois  60601
18                              (312) 558-5600

19                              MS. CAROLYN PELLING GURLAND
                                Attorney at Law
20                              2 North LaSalle Street
                                17th Floor
21                              Chicago, Illinois  60602
                                (312) 420-9263
22
      Court Reporter:           MS. MARY M. HACKER
23                              Official Court Reporter
                                219 S. Dearborn St., Suite 1222
24                              Chicago, Illinois  60604
                                (312) 435-6890
25
```

**24**

1   simple and/or statements that indicate that the weight loss

2   protocol involves only a few other little things; or

3     Statements that indicate that no exercise is required by the

4   weight loss protocol; or

5     Statements that indicate that after finishing the protocol,

6   there are no restrictions on what you can eat, and that you'll

7   never have to diet ever again to avoid gaining weight; or

8     Statements that indicate that only minors should do the

9   weight loss protocol under the supervision of a licensed

10  health care practitioner; or

11    Statements that indicate that while on the protocol, people

12  will have no hunger and/or statements that indicate that the

13  protocol includes no food deprivation; or

14    Statements that indicate that anyone can cure food cravings

15  in two minutes using the Callahan Technique; or

16    Statements that indicate that the weight loss protocol is

17  not a diet and/or the protocol does not involve portion

18  control, calorie counting, watching your carbs, watching your

19  fat or crazy potions, powders or pills; or

20    Statements that indicate that anybody can do the weight loss

21  protocol; or

22    Failure to disclose the specifics regarding the use and

23  administration of HCG during the weight loss protocol and/or

24  statements that indicate that HCG is a substance that you can

25  get anywhere.

1          The government is not required to prove beyond a

2     reasonable doubt that every one of these statements or

3     omissions misrepresented the content of the book, but it is

4     required to prove beyond a reasonable doubt that at least one

5     of them misrepresented the content of the book.  To find that

6     the government has proven this, you must unanimously -- you

7     must agree unanimously as to which one of the statements or

8     omissions misrepresented the content of the book, as well as

9     all other elements of the crime charged.

10          A violation of a court order is wilful if it is a

11     volitional act done by one who knows or should reasonably be

12     aware that his conduct is wrongful.  A person should

13     reasonably be aware that his conduct is wrongful if he is

14     conscious of a substantial and unjustifiable risk that the

15     prohibited event (here, violation of the September 2, 2004,

16     court order) will come to pass, and he disregards that risk.

17          In deciding whether the defendant acted wilfully, you

18     may consider all of the evidence, including what the defendant

19     did or said.

20          If the defendant acted in good faith, then he lacked

21     the wilfulness required to prove the offense of contempt with

22     which he is charged.  The defendant acted in good faith if, at

23     the time, he honestly believed that his statements in the

24     infomercials did not violate the court order.

25          The defendant does not have to prove his good faith.

**26**

1   Rather, the government must prove beyond a reasonable doubt

2   that the defendant acted wilfully, as charged.

3           Whether the content of the book The Weight Loss Cure

4   "They" Don't Want You to Know About is truthful is not an

5   issue for you to decide in this case.  Likewise, whether the

6   weight loss protocol described in the book The Weight Loss

7   Cure "They" Don't Want You to Know About is effective for

8   weight loss is not an issue for you to decide.  These issues

9   are not relevant to this case.

10          The charge alleges that the crime happened on or

11  about December 23, 2006, January 8, 2007, and July 6, 2007.

12  The government must prove that the crime happened reasonably

13  close to those dates.  The government is not required to prove

14  that the crime happened on those exact dates.

15          In deciding your verdict, you should not consider the

16  possible punishment for the defendant.  If you decide that the

17  government has proved the defendant guilty beyond a reasonable

18  doubt, then it will be my job to decide on the appropriate

19  punishment.

20          Once you are all in the jury room, the first thing

21  you should do is choose a foreperson.  That person will see to

22  it that your discussions are carried on in an organized way

23  and that everyone has a fair chance to be heard.  You may

24  discuss the case only when all jurors are present.

25          Once you start deliberating, do not communicate about

**27**

FILED

NOV 1 2 2013
NOV 12 2013
RONALD A. GUZMAN, JUDGE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.    10 CR 886 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| KEVIN TRUDEAU | ) | |

**JURY INSTRUCTIONS**  – GIVEN

The defendant is charged with criminal contempt. For you to find the defendant guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

1) The court entered a reasonably specific order;

2) The defendant violated the order by misrepresenting the content of the book *The Weight Loss Cure "They" Don't Want You to Know About* in an infomercial:

3) The defendant's violation of the court order was willful.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from you consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

15

The government contends that the defendant misrepresented the content of the *Weight Loss Cure* book by making one or more of the following statements or omissions in an infomercial:

- Statements that indicate that you can finish or be done with the weight loss protocol and/or statements that indicate that the protocol is a cure that corrects the cause of obesity; or

- Statements that indicate that people can do the weight loss protocol at home, and you don't have to go to a clinic to do it; or

- Statements that indicate that the weight loss protocol is simple and/or statements that indicate that the weight loss protocol involves only a few other little things; or

- Statements that indicate that "no exercise" is required by the weight loss protocol; or

- Statements that indicate that after finishing the protocol, there are no restrictions on what you can eat, and that you'll never have to diet ever again to avoid gaining weight; or

- Statements that indicate that only minors should do the weight loss protocol under the supervision of a licensed health care practitioner; or

- Statements that indicate that while on the protocol, people will have no hunger and/or statements that indicate that the protocol includes no food deprivation; or

- Statements that indicate that anyone can cure food cravings in two minutes using the Callahan technique; or

- Statements that indicate that the weight loss protocol is not a diet and/or the protocol does not involve portion control, calorie counting, watching your carbs, watching your fat or crazy potions, powders or pills; or

- Statements that indicate that anybody can do the weight loss protocol; or

16

- Failure to disclose the specifics regarding the use and administration of HCG during the weight loss protocol and/or statements that indicate that HCG is a substance that you can get anywhere.

The government is not required to prove beyond a reasonable doubt that every one of these statements or omissions misrepresented the content of the book, but it is required to prove beyond a reasonable doubt that at least one of them misrepresented the content of the book. To find that the government has proven this, you must agree unanimously as to which one of the statements or omissions misrepresented the content of the book, as well as all other elements of the crime charged.

17

A violation of a court order is willful if it is a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful. A person should reasonably be aware that his conduct is wrongful if he is conscious of a substantial and unjustifiable risk that the prohibited event (here, violation of the September 2, 2004 Court Order) will come to pass, and he disregards that risk.

In deciding whether the defendant acted willfully, you may consider all of the evidence, including what the defendant did or said.

If the defendant acted in good faith, then he lacked the willfulness required to prove the offense of contempt with which he is charged. The defendant acted in good faith if, at the time, he honestly believed that his statements in the infomercials did not violate the court order.

The defendant does not have to prove his good faith. Rather, the government must prove beyond a reasonable doubt that the defendant acted willfully, as charged.

19

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| | ) | |
| Plaintiff | ) | Case No 10 CR 886 |
| USA | ) | |
| v. | ) | |
| | ) | Judge:   Ronald A. Guzman |
| | ) | |
| Defendant | ) | |
| Kevin Trudeau | | |

## <u>ORDER</u>

(T:) 5:30

Jury trial held.   Jury deliberation.   Jury returns verdict of guilty.   Jury trial ends.   Post-trial motions to be filed by 12/3/2013.   Response due 12/17/2013.   Reply due 1/3/2014.   Sentencing set for 2/6/2014 at 10:30 a.m.      It is hereby ordered that defendant's bond is revoked and he is taken into custody by the U.S. Marshal.   It is further ordered that defendant may keep his contact lenses.

Date: November 12, 2013

_____  /s/  *Ronald A. Guzman*

**HON. RONALD A. GUZMAN**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 CR 886 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| KEVIN TRUDEAU, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In 2004, defendant Kevin Trudeau settled a civil lawsuit with the Federal Trade Commission by agreeing to a consent order that prohibited him from making infomercials that misrepresented the content of his books. (*See* Gov. Ex. 5.) In 2006 and 2007, defendant made multiple infomercials promoting his book *The Weight Loss Cure "They" Don't Want You To Know About.* (*See* Trial Stipulation #3.) In the infomercials, defendant made many claims about the protocol described in his book, including that it was "not a diet," did not involve "portion control," "calorie counting" or "deprivation," and could be "do[ne] . . . at home." (*See* Gov. Ex. 19. ) Defendant also claimed that the protocol involved a "miracle all-natural substance" that "you can get . . . anywhere." (*Id.*) Defendant further claimed that "when you're done with the protocol, [you can] eat whatever you want and you don't gain the weight back." (*Id.*)

Because the government believed these representations violated the 2004 consent order, defendant was charged with both civil and criminal contempt of court. Specifically, the government alleged that contrary to the infomercials, the book actually contained an onerous diet that involved eating only 500 calories a day from a restricted list of foods; required daily doctor's appointments; involved daily injections of the hormone hCG, which is only available by prescription and has not

been approved for weight loss in the United States; and involved permanently giving up foods that most people eat every day. (*See* Gov. Ex. 4.) Trudeau denied the civil contempt allegations and pleaded not guilty to the criminal contempt allegations. Trudeau was found guilty of civil contempt, *see FTC v. Trudeau*, 579 F.3d 754 (7th Cir. 2009), and after a criminal jury trial held before this Court in November 2013, of criminal contempt. He now files a motion for judgment of acquittal claiming that the evidence at trial was insufficient to prove that he willfully violated the 2004 consent order. For the reasons stated herein, the motion is denied.

In a Federal Rule of Criminal Procedure 29 motion for acquittal challenging the sufficiency of the evidence, the Court views the evidence and all reasonable inferences from it in the light most favorable to the government, defers to the jury's credibility determinations, and will "overturn [ ] a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Parker*, 716 F.3d 999, 1007 (7th Cir. 2013); *see United States v. Hach*, 162 F.3d 937, 942 (7th Cir. 1998). The jury was instructed that the government had to establish each of the following propositions beyond a reasonable doubt to prove defendant guilty of criminal contempt: (1) the court entered a reasonably specific order; (2) defendant violated the order by misrepresenting the content of the book *The Weight Loss Cure "They" Don't Want You to Know About* in an infomercial; and (3) defendant's violation of the consent order was willful. There was more than sufficient evidence for a reasonable jury to conclude that the government had met its burden of proof as to each of these elements.

The consent order was admitted at trial pursuant to a stipulation, so the jurors could and did see that it clearly prohibits defendant from making infomercials that misrepresent the content of his books. They also saw that the order was signed by defendant, personally and through counsel,

effectively scotching any argument that he was ignorant of its terms. The defendant also stipulated he was the author of the book, thus effectively killing any argument that he was ignorant of the book's content. *See* Trial Stipulation No. 2. The jury watched the infomercials, hearing from defendant's own mouth the words he used to describe the content of his book, and could compare these descriptions to the content of the book itself, which was also admitted in evidence. All of this evidence supports the jury's conclusion that defendant made blatantly false and misleading statements in the infomercials about the content of his book, including that: (1) the protocol in the book was "not a diet," did not involve "portion control," "calorie counting," or "deprivation"; (2) "you can do [the protocol] at home," with a "miracle all-natural substance" that "you can get . . . anywhere"; and (3) "when you're done with the protocol, eat whatever you want and you don't gain the weight back."

Despite the wealth of evidence to the contrary, defendant argues that there was a "near-perfect symmetry" between the infomercials and the book, and thus no proof of willfulness. (Mot. J. Acquittal at 6, Dkt. #150.) The jury, however, clearly rejected this argument, and its decision is supported by the record. The evidence showed, for example, that some claims made in the infomercials, *e.g.*, that you can do the protocol at home and can get hCG "anywhere," do not even appear in the book. Moreover, it supports the inference that other infomercial claims, *e.g.*, the protocol is not a diet, appear in the book but still grossly misrepresent its overall content.

Defendant implies that it is impossible to prove willfulness without a confession or "direct evidence" such as testimony from a witness about the defendant's state of mind or testimony from the defendant himself. That is not the law, as the reflected by the following pattern jury instructions, which the Court, with defendant's agreement, gave to the jury:

3

You may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is evidence that directly proves a fact. Circumstantial evidence is evidence that indirectly proves a fact.

You are to consider both direct and circumstantial evidence. The law does not say that one is better than the other. It is up to you to decide how much weight to give to any evidence, whether direct or circumstantial.

and

Give the evidence whatever weight you decide it deserves. Use your common sense in weighing the evidence, and consider the evidence in light of your own everyday experience.

People sometimes look at one fact and conclude from it that another fact exists. This is called an inference. You are allowed to make reasonable inferences, so long as they are based on the evidence.

(Jury Instructions at 6-7, Dkt. #147); *see* Seventh Circuit Pattern Jury Instruction Nos. 2.02 & 2.03.

Defendant offers nothing to suggest that the jury disregarded these instructions.

There was ample evidence from which the jury could infer that defendant acted willfully. First and foremost were the infomericals themselves. The jurors watched as defendant made his sales pitch, eagerly answering the "interviewer's" questions and excitedly recounting fantastic success stories, all while looking directly into the camera. (*See* Trial Stipulation #3.) Defendant's speech patterns, manner of delivery and eagerness to engage the audience, all suggest that he understood fully what he was doing. The same inference can be drawn from some of the parties' stipulations. In Trial Stipulation No. 6, the parties agreed that, shortly before the infomercials were filmed, defendant sold several assets to ITV, the company that produced and marketed the infomercials, in exchange for a promise to pay him $121 million. (*See* Trial Stipulation #6.) They also agreed that defendant "anticipated making money based on this stock purchase agreement in connection with the Weight Loss Cure book" but was not receiving payments from ITV when the

4

infomercials were filmed. (*See id.*) In Trial Stipulation No. 5, the parties agreed that defendant is

entitled to 65% of the royalty payments from the retail sales of the book. (*See id.*) The jury could

reasonably conclude from this evidence that defendant had a strong financial incentive to increase

book sales, and thus to make the books irresistible in his infomercials. The book's cover references

the infomercials with a label that states "As Seen on TV" thus inviting consumers to purchase the

books based upon the defendant's infomercial representations. *See* Gov. Ex. 4. In short, the evidence

amply supports the jury's conclusion that defendant's actions were willful.[1]

For all of the reasons set forth above, the defendant's motion for judgment of acquittal is

denied.

**SO ORDERED.**                                    **ENTERED: January 29, 2014**

_____

**HON. RONALD A. GUZMAN**
**United States District Judge**

---

[1]The Seventh Circuit drew the same conclusion in the civil contempt case. After considering much of the same evidence, including the book and the infomercials, the court said that defendant "clearly misrepresented the book's content," "loaded" his infomercials with "statements that are patently false," "outright lied," made "blatant misrepresentations," and "repeatedly distorted" the content of the book. *FTC v. Trudeau*, 579 F.3d 754, 757-68 (7th Cir. 2009). While the Seventh Circuit did not specifically address whether defendant acted willfully, its conclusions support that finding; an outright lie is a willful act.

5

1              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3   UNITED STATES OF AMERICA,          )
                                       )
4              Plaintiff,              )
                                       )
5     v.                               )  No. 10 CR 886
                                       )
6   KEVIN TRUDEAU,                     )  Chicago, Illinois
                                       )  March 17, 2014
7              Defendant.              )  2:00 p.m.

8            TRANSCRIPT OF PROCEEDINGS - SENTENCING
             BEFORE THE HONORABLE RONALD A. GUZMAN
9

10  APPEARANCES:

11  For the Plaintiff:        HON. ZACHARY T. FARDON
                              United States Attorney
12                            BY:  MR. MARC KRICKBAUM
                                   MS. APRIL M. PERRY
13                            Assistant United States Attorneys
                              219 South Dearborn Street
14                            Suite 500
                              Chicago, Illinois  60604
15                            (312) 353-5300

16  For the Defendant:        WINSTON & STRAWN LLP
                              BY:  MR. THOMAS LEE KIRSCH II
17                            35 West Wacker Drive
                              Chicago, Illinois  60601
18                            (312) 558-5600

19                            MS. CAROLYN PELLING GURLAND
                              Attorney at Law
20                            2 North LaSalle Street
                              17th Floor
21                            Chicago, Illinois  60602
                              (312) 420-9263
22

23

24

25

                  Nancy C. LaBella, CSR, RMR, CRR
                        Official Court Reporter
                219 South Dearborn Street, Room 1222
                      Chicago, Illinois  60604
                   **40**(312) 435-6890
                 Nancy_LaBella@ilnd.uscourts.gov

1          Your Honor, these have been my words and my words

2    alone.  I wrote them.  I am speaking from the heart with the

3    deepest sincerity.  I hope you know that they are authentic,

4    genuine and the truth.

5          My life and that of my family is now in your hands.

6          Thank you very much for listening, your Honor.

7          THE COURT:  Let me start out by saying that the Court

8    has reviewed the voluminous submissions of the parties in this

9    case, the letters, the e-mails, the stories.  I am intimately

10   familiar with the facts of the case from the trial itself and

11   from the preparation for the trial, which included reviewing

12   and reading the dozens of prior court proceedings and orders

13   regarding Mr. Trudeau and his weight loss book.

14         This sentencing is no different than any other.  It

15   involves the presentation of both sides of the same story.

16   And the sides are, it should surprise no one, quite different

17   depending on who you're listening to.

18         I want first to start out by pointing out some of the

19   difficulties the Court has in determining sentences in cases,

20   all cases, especially cases such as this.

21         The very first reference letter in Tab 1 of this

22   80-some reference letters written to me is two pages long

23   written by a clearly well-meaning gentleman who says in about

24   the third paragraph of his letter, "When I heard that he was

25   accused of not telling the truth in the book, I stopped and

1   wondered exactly what I was that they were referring to in the

2   book."  I'm reading it as he wrote it.  "I don't find this to

3   be true from the average joe's viewpoint."

4           Well, as the defense has pointed out and the

5   government have both pointed out and the Court pointed out to

6   the jury during the course of the trial, the trial never was

7   about whether Mr. Trudeau was telling the truth in his book.

8   Many of these letters are full of such misconceptions, which

9   are unfortunate because they leave people with improper

10  impressions and, frankly, dilute the value of the letters

11  insofar as sentencing.

12          Some of them are just written by people who clearly

13  see only what they want to see.  Tab 3 is a letter from a

14  person in Connecticut who writes, "I believe you get a good

15  understanding of someone's true character when you have known

16  them for almost three decades.  Kevin was 21 when I first met

17  him.  And one of my first observations was how much time he

18  invested in personal development, self-improvement,

19  professional development, health and wellness."

20          The fact of the matter is that four years later, he

21  pled guilty to fraud and was sentenced to five years in jail.

22          These misconceptions are, I think, truly tragic.

23          There's another letter at Tab 6 written by a former

24  congressman, in which he says, "Your stern, straightforward,

25  no-nonsense lectures to Kevin have helped him to become more

**42**

1    responsible, aware and cognizant of his actions to become more
2    humble, sincere and a better person."
3        And that would be a wonderful thing if indeed I had
4    ever lectured Mr. Trudeau about anything.  Obviously this
5    gentleman is confusing me with Judge Gettleman.
6        I can go on and on, having read all of these.
7        Tab 13 is written by a person who runs a health
8    system.  In his last paragraph, he expresses thankfulness at
9    "how many patients Kevin has referred to me personally and to
10   my other health care professionals.  In the last year alone,
11   he has referred patients to me from the United States, Canada,
12   Brazil, France, Switzerland, the UK, Australia, Poland,
13   Germany, Thailand, New Zealand and the Czech Republic, to name
14   a few."  He ends up by saying he would feel very poorly if
15   Mr. Trudeau were to spend any substantial time in jail.
16       It is, I hope you can see from these examples, very,
17   very difficult to gauge the value of any of these
18   correspondence.  We do our best.  But after all is said and
19   done, these determinations come down mostly to one thing; and,
20   that is, the defendant and, even more so, what the defendant
21   has done.  That's one of the reasons I asked how many times
22   Mr. Trudeau has been found to be in contempt of court.  Now,
23   most of the people I know, most of the people you know, most
24   of the people the vast majority of citizens in the United
25   States of America know have never been found in contempt of

**43**

1    court.

2        Mr. Trudeau started in 1996.  Again in 1998 he was

3    enjoined.  In 2003 he was enjoined.  In 2003 again found in

4    contempt.  In 2004 twice.  That doesn't happen by accident.

5    And it doesn't happen from good intentions.  It doesn't happen

6    to an ordinary, honest person.  These are the things

7    Mr. Trudeau has done.

8        Mr. Trudeau has already been convicted, before coming

9    to this Court, of fraudulent conduct.  How many people does

10   the average American know that has been convicted not once but

11   twice, not only in state court but in federal court, of

12   fraudulent conduct; been sentenced to jail twice already for

13   fraudulent conduct?  Not very many.  That does not happen by

14   accident.  It is a reflection of a person's character.

15       Mr. Trudeau's case before this Court requires a

16   sentence that will deter him from future conduct of the same

17   type and also, more importantly, because he has so publicly

18   stated his case, provide deterrence in the general sense to

19   others -- and there are many others; all you have to do is

20   turn on your TV set late at night and listen to one

21   infomercial after another -- many, many others who would

22   follow in his footsteps.

23       He has treated federal court orders as if they were

24   merely suggestions or, at most, impediments to be sidestepped,

25   outmaneuvered or just plain ignored.

**44**

1        He has publicly ridiculed court orders and the
2   court's ability to enforce its orders.

3        He has blatantly rejected many opportunities to
4   change his conduct and to show true remorse, not by fancy
5   speeches, but by his actions.

6        Since the age of 25, he has steadfastly attempted to
7   cheat others for his own personal gain.

8        He has engaged in fraudulent conduct using sometimes
9   as many as 9, 10, 13 different aliases; dozens of different
10  social security numbers.  He has even used his mother's social
11  security number in one of his scams and used his father and
12  his brother's name in another.

13       He has no true recognition of his own blame.  He
14  comes here today blaming the FTC for not catching him in time.

15       His argument is that telling the truth is such a
16  difficult concept that it requires vast amounts of negotiation
17  between his attorneys and government attorneys, who, by the
18  way, have more than just Mr. Trudeau to deal with.

19       Truth is, the government has spent probably hundreds
20  of thousands of dollars and who knows how many tens of
21  thousands of hours trying to police just Mr. Trudeau alone.

22       And even now, really on the eve of his sentencing, he
23  sends this Court a letter.  It's a supplemental report sent to
24  the Court in aid of sentencing.

25       He starts out by telling us that he humbly and

**45**

1    respectfully submits this letter.  During the course of the

2    letter, he explains how his Weight Loss Cure book and

3    infomercial came about.  He tells us, "I have been afflicted

4    with a weight problem my entire life.  When I found the

5    Dr. Simeons' HCG weight loss protocol and was successful at

6    losing weight and keeping it off, I was ecstatic.  I lost

7    45 pounds in 45 days and kept it off.  I was cured of my

8    weight problem for the first time in my life.  I was excited,

9    overjoyed and passionate about the protocol.  I genuinely

10   wanted everyone who had a weight issue to know about and

11   experience the weight loss cure that changed my life.  My

12   passion, excitement and zealousness overtook me."

13          Now, I quote that because, as the government has

14   previously pointed out here, although I think not quite with

15   sufficient emphasis, the chronology of events that that

16   paragraph portrays is not true.

17          The truth is that even as he was going off to Germany

18   to lose the weight, before he had even tried the program,

19   found that it worked, had any reason to be ecstatic, joyful

20   and wanting to share his experience, he was already planning

21   to shoot the weight loss show in Boston immediately upon his

22   return.  If Mr. Trudeau was excited at that point, it could

23   only be about the idea of coming back to Boston to write his

24   book, shoot his infomercials and make millions of dollars.  He

25   could not possibly have been excited about a plan, a protocol,

**46**

```
 1   a diet that he had not even yet tried.

 2          These are the types of fundamental deceptions in

 3   which he deals.  He is deceitful to the very core.  And that

 4   type of conduct simply cannot stand.  It exposes the public to

 5   harm.  His disrespect for the Court undermines respect for the

 6   law, erodes faith in our judicial system, causes harm to

 7   individuals and to society in general.

 8          There is no doubt that along the way, some people

 9   have been helped by something Mr. Trudeau has done.  And for

10   this he deserves some credit.  But this case was about his

11   latest in a history of refusals to follow court orders that

12   were nothing more than directions to tell the public the

13   truth.  And that's just not so hard.

14          It is the Court's opinion that the guideline range is

15   appropriate in this case.  That range allows for credit for

16   the defendant's good deeds and other factors because it is a

17   range.  The Court, however, is swayed by the government's

18   request in this case in recommending a sentence that is below

19   the guideline range.  And for these reasons, the Court intends

20   to enter the following sentence in this case:

21          Pursuant to the Sentencing Reform Act of 1984, it is

22   the judgment of the Court that the defendant, Kevin Trudeau,

23   is hereby committed to the custody of the Bureau of Prisons to

24   be imprisoned for a total term of 120 months on Count One.

25          The Court finds that due to the imposition of the
```

47

1   civil sanctions he faces and the fact that he is now

2   incarcerated, he lacks the ability at this point in time to

3   pay a fine and hereby waives that fine.

4           He shall pay the mandatory special assessment of

5   $100.

6           Upon release from imprisonment, he shall be placed on

7   supervised release for a term of five years.  While on

8   supervised release, he shall not commit any other federal,

9   state or local crime.  He shall comply with the standard

10  conditions that have been adopted by this Court and the

11  following additional conditions:  He shall refrain from any

12  unlawful use of a controlled substance.  He shall cooperate

13  with the collection of a DNA sample.  He shall not possess a

14  firearm or any other destructive device.  He shall cooperate

15  in the collection of any civil judgments issued against him

16  and shall make full disclosure of all financial records and

17  information whenever required by his probation officer.  He

18  shall abide by all court orders filed in any civil lawsuits in

19  which he is named.  And he shall not frequent any

20  establishments where gambling occurs, including but not

21  limited to casinos.

22          Are there any questions about the Court's intended

23  sentence?

24          MS. PERRY:  Not about the sentence, Judge.  Given

25  that he's incarcerated, there is a bond exoneration form that

1    we would be requesting.

2            THE COURT:  Bond will be exonerated.

3            MR. KIRSCH:  Your Honor, we would request that the

4    Court recommend Montgomery, Alabama, as the facility where the

5    defendant serves his sentence.  He has family in Montgomery.

6    His parents are too ill and infirm to visit him in prison, but

7    he has some family in Alabama that would be able to visit him

8    if he was incarcerated there.

9            THE COURT:  The Court will make no recommendation as

10   to where he should be incarcerated.  The Bureau of Prisons is

11   almost always in a better position to make that determination

12   than the courts.

13           Sir, it's my duty to advise you that you can appeal

14   your conviction if you believe that there was some defect in

15   the proceedings during the course of your trial.

16           You also have a statutory right to appeal your

17   sentence itself, particularly if you think that the sentence

18   is contrary to the law.

19           You have the right to apply for leave to appeal in

20   forma pauperis, which means without having to pay the usual

21   fee that is required, and the clerk of the court will prepare

22   and file a notice of appeal for you if you request it.

23           With few exceptions, any notice of appeal must be

24   filed within 14 days of the entry of the judgment I have

25   announced I intend to enter in this case.

**49**

```
1              Do you have any questions about your right to appeal?

2              MR. KIRSCH:  Just one second, your Honor.

3       (Brief pause.)

4              THE DEFENDANT:  No, your Honor.

5              THE COURT:  Court stands adjourned.

6                      *    *    *    *    *

7

8    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
9

10
     /s/ Nancy C. LaBella                  May 20, 2014
11   Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Northern District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| KEVIN TRUDEAU | Case Number:    10 cr 886-1 |
| | USM Number:    18046-036 |
| | Thomas L. Kirsch II |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

X was found guilty on count(s)    One
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. Section 401(3) | Criminal contempt of Court | 7/06/2007 | I |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

March 17, 2014
Date of Imposition of Judgment

_Signature of Judge_

Ronald A. Guzman, United States District Judge
Name and Title of Judge

4/3/2014
Date

AO 245B    (Rev. 09/11) Judgment in Criminal Case
      Sheet 2 — Imprisonment

|  |  |
|---|---|
| **DEFENDANT:** | Trudeau, Kevin |
| **CASE NUMBER:** | 10 CR 886-1 |

Judgment — Page   2   of   7

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

One Hundred Twenty (120) Months.

☐   The court makes the following recommendations to the Bureau of Prisons:

X   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____ ☐ a.m. ☐ p.m.   on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | | Judgment—Page __3__ of __7__ |

DEFENDANT:    Trudeau, Kevin
CASE NUMBER:    10 CR 886-1

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    Five (5) Years.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐    The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case Document: 26    Filed: 08/25/2014    Pages: 143
           Sheet 3B — Supervised Release

Judgment—Page ___4___ of ___7___

DEFENDANT:          Trudeau, Kevin
CASE NUMBER:        10 CR 886-1

## ADDITIONAL STANDARD CONDITIONS OF SUPERVISION

The defendant shall submit to one drug test within 15 days of release from imprisonment and random drug tests thereafter, conducted by the U.S. Probation Office, not to exceed 104 tests per year.

Case: 1:10-cr-00886 Document #: 173 Filed: 04/03/14 Page 5 of 7 PageID #:4577

Case: 14-1869    Document: 26    Filed: 08/25/2014    Pages: 143

DEFENDANT:     Trudeau, Kevin
CASE NUMBER:    10 CR 886-1

# SPECIAL CONDITIONS OF SUPERVISION

The defendant shall cooperate in the collection of any civil judgments issued against him and shall make full disclosure of all financial records when required by his Probation Officer.

The defendant shall abide by all court orders filed in any civil lawsuits in which he is named.

The defendant shall not frequent any establishments where gambling occurs, including, but not limited to, casinos.

DEFENDANT:       Trudeau, Kevin
CASE NUMBER:     10 CR 886-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 100 | $ | $ |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

   If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ | $ _____ | |

☐  Restitution amount ordered pursuant to plea agreement   $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐  the interest requirement is waived for the   ☐ fine   ☐ restitution.

   ☐  the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:     Trudeau, Kevin
CASE NUMBER:   10 Cr 886-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**   **X**   Lump sum payment of $   100        due immediately, balance due

      ☐   not later than             , or
      ☐   in accordance    ☐ C,  ☐ D,  ☐  E, or  **X** F below; or

**B**  ☐   Payment to begin immediately (may be combined with    ☐ C,   ☐ D, or   ☐ F below); or

**C**  ☐   Payment in equal         *(e.g., weekly, monthly, quarterly)* installments of $        over a period of
            *(e.g., months or years)*, to commence       *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐   Payment in equal         *(e.g., weekly, monthly, quarterly)* installments of $        over a period of
            *(e.g., months or years)*, to commence       *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

**E**  ☐   Payment during the term of supervised release will commence within       *(e.g., 30 or 60 days)* after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  **X**   Special instructions regarding the payment of criminal monetary penalties:

     The balance of any financial obligation, upon release from custody, shall be paid in monthly
     payments during supervised release at a rate of at least ten percent of the defendant's net monthly
     income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

     Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
     and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.